[Cite as *Kellard v. Cincinnati*, 2021-Ohio-1420.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | | |
|---|---|---|---|
| TIMOTHY KELLARD, | : | APPEAL NOS. | C-200024 |
| | | | C-200029 |
| Plaintiff-Appellee/Cross-Appellant, | : | TRIAL NO. | A-1903829 |
| | : | | |
| vs. | | | |
| | : | *O P I N I O N.* | |
| CITY OF CINCINNATI, | | | |
| | : | | |
| Defendant-Appellant/Cross-Appellee. | : | | |

Civil Appeals From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Reversed in Part and Affirmed in Part as Modified

Date of Judgment Entry on Appeal:  April 23, 2021

*Phillips Law Firm, John H. Phillips* and *Kyle E. Hackett,* and *Robb S. Stokar for* Plaintiff-Appellee/Cross-Appellant,

*Andrew W. Garth,* Interim City Solicitor, and *Emily Smart Woerner,* Deputy City Solicitor, for Defendant-Appellant/Cross-Appellee.

**BERGERON, Judge.**

{¶1}   For two years after the Ohio General Assembly passed legislation invalidating its gun-related employment policies, the city of Cincinnati dragged its feet, failing to implement the necessary revisions.  Frustrated by this delay, a disgruntled employee sued, which spurred the cogs of local government into motion.  Within four days, and before the trial court ever convened a hearing in this case, the city's policies complied with the relevant statute.  Yet the employee remained unsatisfied, and he convinced the trial court that only injunctive relief could prevent the city's future defiance of Ohio law.

{¶2}   The trial court awarded a litany of remedies in this case, including a permanent injunction, declaratory judgment, costs, attorneys' fees, and damages.  The parties, in turn, present us with a variety of issues on appeal and cross-appeal.  We conclude that, although the employee is entitled to some attorneys' fees, the trial court exceeded the bounds of its subject matter jurisdiction by awarding declaratory and injunctive relief for a purely speculative future harm.  We sustain the city's two assignments of error in part, overrule the employee's two cross-assignments of error, and modify the trial court's attorney fee award.

I.

{¶3}   The origins of this case stretch back to 2017, when the Ohio General Assembly enacted the current form of R.C. 2923.1210.  The statute reads, in pertinent part:

(A)   A business entity, property owner, or public or private

   employer may not establish, maintain, or enforce a policy or rule that

   prohibits or has the effect of prohibiting a person who has been issued

2

a valid concealed handgun license from transporting or storing a firearm or ammunition when both of the following conditions are met:

> (1)     Each firearm and all of the ammunition remains inside the person's privately owned motor vehicle while the person is physically present inside the motor vehicle, or each firearm and all of the ammunition is locked within the trunk, glove box, or other enclosed compartment or container within or on the person's privately owned motor vehicle;
>
> (2)     The vehicle is in a location where it is otherwise permitted to be.

Under former (and current) R.C. 9.68, R.C. 2923.1210 preempts all contradictory local regulation of concealed handgun license-carriers. If a party "prevails in a challenge to an ordinance, rule, or regulation as being in conflict" with R.C. 2923.1210 (and by extension, R.C. 9.68(A)), then the court "*shall* award costs and reasonable attorney fees." (Emphasis added.) Former R.C. 9.68(B).

{¶4} At the time of R.C. 2923.1210's promulgation, two of the city's policies—Human Resources Policy and Procedure 5.1 ("H.R. 5.1") and Administrative Regulation 49 ("Admin. Reg. 49")—ran afoul of the new statute. The city recognized the issue and began discussing the need to revise the policies, shortly in the aftermath of the legislative change. But for unknown reasons, these efforts stalled, and the offending provisions remained on the books.

{¶5} Fast forward two years to the present conflict. On August 15, 2019, Timothy Kellard—a city of Cincinnati employee—filed a complaint and motion for a temporary restraining order ("TRO") and preliminary injunction against the city. As a valid CCW license-holder, Mr. Kellard complained that he desired "to lawfully store

3

his handgun in his privately-owned vehicle in a city parking lot," but had "never done so because he reasonably fear[ed] discipline, up to and including termination." He alleged that the city was in active violation of R.C. 2923.1210, that it was enforcing its illegal policies, and that those policies created a "chilling effect on other City employees" with concealed-carry licenses. As remedies for the city's violation of R.C. 2923.1210, Mr. Kellard sought declaratory judgment, injunctive relief, costs and attorneys' fees, and compensatory and punitive damages.

{¶6} The timeline of this case proves critical to its outcome, but the parties disagree on a few key facts. The city maintains that it stopped enforcing H.R. 5.1 and Admin. Reg. 49 after the enactment of R.C. 2923.1210 in 2017, and Mr. Kellard remained free to store his gun in his car on city property notwithstanding the policies in question. It points to draft policy revisions and internal correspondence as proof that formal changes were forthcoming—just delayed a bit. Mr. Kellard, for his part, insists that the policies *were* being enforced, he "feared discipline and/or retaliation for highlighting the City's non-compliance with Ohio law," and he therefore did not feel comfortable asking a supervisor, human resources professional, or any other city representative about the policies. The parties agreed that Mr. Kellard never inquired about the policies or communicated his desire to store his firearm in his vehicle. But the city also conceded that in the two years that passed between enactment of R.C. 2923.1210 and Mr. Kellard's lawsuit, it never formally revised its policies—nor did it notify employees of its intent not to enforce them.

{¶7} By the time of the trial court's initial hearing on Mr. Kellard's requested TRO, one thing was clear: the offending portions of H.R. 5.1 and Admin. Reg. 49 were no longer on the books. Between August 15 (when Mr. Kellard filed suit) and August 19 (when the trial court issued its first order in this case), the city

4

formally amended both policies to bring them in line with Ohio law. Although Mr. Kellard did not contest that the amended policies satisfied R.C. 2923.1210, he nevertheless continued his quest for injunctive relief against the city, arguing that without a permanent injunction, the city remained free to return to (and presumably enforce) its erstwhile policies.

{¶8} From the outset of the August 19 TRO hearing in this case, the city maintained that any justiciable controversy evaporated with its successful overhaul of H.R. 5.1 and Admin. Reg. 49. Unswayed by the challenge to its subject matter jurisdiction, the trial court granted Mr. Kellard's motion for a TRO. Following a September 11 hearing on injunctive relief, the trial court explicitly found Mr. Kellard's suit justiciable for both declaratory judgment and injunctive relief. It also held that the city changed its policies "in response to the lawsuit filed by Timothy Kellard," which—in the trial court's view—rendered him a "prevailing party" entitled to attorneys' fees under former R.C. 9.68(B). The trial court entered a permanent injunction against the city, prohibiting it:

> directly and indirectly, from changing any aspect of its Human Resources Policies and Procedures of its Administrative Regulations to prohibit or have the effect of prohibiting City employees who are valid CCW License holders from transporting and storing their firearms in their private vehicles so long as the employees follow the statutory requirements set forth in R.C. 2923.1210 and R.C. 9.68.

A few weeks later, the trial court convened an additional hearing on attorneys' fees and damages. It awarded approximately $47,000 in attorneys' fees to Mr. Kellard's counsel and $702.96 in damages to Mr. Kellard for "time and gas spent retrieving his firearm after work every day." The city of Cincinnati now appeals the trial court's

5

grant of injunctive and declaratory relief, as well as its award of fees and damages.[1]

Mr. Kellard cross-appeals the trial court's award of attorneys' fees and damages.

II.

{¶9}  In the first issue framed by its first assignment of error, the city challenges the trial court's exercise of jurisdiction to enter injunctive and declaratory relief.  We review a trial court's determination on the issue of justiciability for abuse of discretion.  *Fulton RR. Co. v. City of Cincinnati*, 1st Dist. Hamilton No. C-150373, 2016-Ohio-3520, ¶ 7, citing *Arnott v. Arnott*, 132 Ohio St.3d 401, 2012-Ohio-3208, 972 N.E.2d 586, ¶ 13.  Reversal is "warranted only if the court's decision regarding justiciability was unreasonable, arbitrary, or unconscionable." *Id.*

{¶10}  "The Ohio Constitution mandates that the subject-matter jurisdiction of the common pleas courts is limited to 'justiciable matters.' " *Waldman v. Pitcher*, 2016-Ohio-5909, 70 N.E.3d 1025, ¶ 20 (1st Dist.), quoting the Ohio Constitution, Article IV, Section 4(B).  A justiciable matter is "more than a disagreement; the parties must have adverse legal interests."  *Kincaid v. Erie Ins. Co.*, 128 Ohio St.3d 322, 2010-Ohio-6036, 944 N.E.2d 207, ¶ 10.  A party seeking a declaratory judgment "need not have sustained a cognizable loss, [but] he or she must face a set of circumstances that exhibits the imminent threat of loss * * * ." *Pitcher* at ¶ 23, citing *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127, 127 S.Ct. 764, 166 L.Ed.2d 604 (2007).  This "danger or dilemma of the plaintiff must be present, and it must not be contingent on the happening of a hypothetical future event." *Fulton* at ¶ 9,

---

[1] Although the city contests Mr. Kellard's entitlement to damages, it never challenges the calculation or amount of the $702.96 awarded.  In light of our conclusion that Mr. Kellard prevailed in his action, therefore, we have no occasion to scrutinize this damage award in the absence of any developed argument by the city.

citing *Mid-Am. Fire & Cas. Co. v. Heasley*, 113 Ohio St.3d 133, 2007-Ohio-1248, 863 N.E.2d 142, ¶ 9.

{¶11} Two Ohio appellate courts have squarely addressed the issue before us of justiciability and former R.C. 9.68. First, in 2007, the Tenth District confronted a challenge to two Columbus ordinances regulating assault weapons. *Smolak v. Columbus,* 10th Dist. Franklin No. 07AP-373, 2007-Ohio-4671, ¶ 2. The plaintiff sought a declaratory judgment that the ordinances violated R.C. 9.68. *Id.* The city countered with a motion to dismiss, challenging justiciability because the Columbus police were no longer enforcing the ordinances (a fact that the *Smolak* plaintiff did not dispute). *Id.* at ¶ 4, 5, 14. On appeal, the Tenth District agreed that the city's nonenforcement of the ordinances rendered the suit non-justiciable. It reasoned that, despite the fact that the ordinances remained on the books, the city's "accept[ance of] the preemptions of the regulation of assault weapons * * * as a result of the enactment of R.C. 9.68 is not open to serious dispute." *Id.* at ¶ 14. It also found the "suggestion that the City of Columbus might some day decide it can disregard the clear requirements of the Ohio Revised Code and choose to attempt to enforce the preempted city ordinances" to be "speculative at best," and therefore insufficient to generate a present controversy between the parties. *Id.*

{¶12} Similarly, in *Ohioans for Concealed Carry, Inc. v. Oberlin*, the Ninth District addressed a 2017 challenge to a city ordinance prohibiting possession of firearms in public parks. *Ohioans for Concealed Carry, Inc. v. Oberlin*, 2017-Ohio-36, 72 N.E.3d 676 (9th Dist.). Like Mr. Kellard, the *Oberlin* plaintiff sought a declaratory judgment, injunctive relief, and attorneys' fees. *Id.* at ¶ 3. Before the trial court entered judgment—but after the city filed its answer to the complaint—the Oberlin city council repealed the offending ordinances. *Id.* at ¶ 4, 5. The parties

7

cross-moved for summary judgment, with the city alleging that repeal of the ordinances rendered the suit non-justiciable. *Id.* at ¶ 5. The Ninth District agreed that, in the wake of this repeal, "no justiciable controversy remain[ed]" as to the lawfulness of the ordinances. *Id.* at ¶ 24.

{¶13} Here, by the time that the trial court reached its August 19, 2019 hearing on Mr. Kellard's motion for a temporary restraining order, all parties agree that the city's policies complied with R.C. 2923.1210. The trial court nevertheless held that the case presented a justiciable controversy because the city "has the ability to change its policies back to the pre-lawsuit versions."

{¶14} But the trial court's conclusion on these grounds contravenes the caselaw requiring a concrete controversy. As in *Oberlin,* Mr. Kellard's "assertion that [the city] *might* at some time in the future enact or reenact ordinances that violate R.C. 9.68 is too speculative to constitute a present dispute." (Emphasis in original.) *See Oberlin* at ¶ 24. Mr. Kellard essentially complains that, without a permanent injunction, the city will be free to flout R.C. 9.68 and 2923.1210 in the future. But "[n]o reason exists to have a court order which merely restates the mandates of the Ohio Revised Code." *Smolak,* 10th Dist. Franklin No. 07AP-373, 2007-Ohio-4671, at ¶ 14. The argument for a present controversy in this case is even more speculative than in *Smolak,* where the offending ordinances were still on the books (and simply unenforced). Like all municipalities—and all individuals, for that matter—the city has a basic duty to follow the laws of this state. It is not the proper role of the courts to permanently enjoin a purely hypothetical future transgression of the Ohio Revised Code. *See Colosseo USA, Inc. v. University of Cincinnati*, 1st Dist. Hamilton No. C-180223, 2019-Ohio-2026, ¶ 18 ("To be justiciable * * * [t]he controversy must be ripe for judicial review, so it 'cannot be dependent on the occurrence or nonoccurrence of

future events.' "), quoting *William Powell Co. v. Onebeacon Ins. Co.*, 2016-Ohio-8124, 75 N.E.3d 909, ¶ 47 (1st Dist.); *Riddick v. MLS Homes, LLC*, 1st Dist. Hamilton No. C-190258, 2020-Ohio-897, ¶ 11 ("To be justiciable, the danger or dilemma faced by the plaintiff must be present, and not merely possible, remote, or contingent on the happening of future acts.").

{¶15} Accordingly, we hold that the trial court abused its discretion when it determined that a justiciable controversy existed as to the lawfulness of the city's former policies. We therefore sustain the city's first assignment of error in part, and reverse the trial court's grant of a permanent injunction and its declaratory judgment that the city's former policies violated former R.C. 9.68 and 2923.1210. This holding does not dispose of the city's full appeal, however, because we must still determine Mr. Kellard's entitlement to attorneys' fees under former R.C. 9.68(B).

## III.

{¶16} In another issue raised by its first assignment of error, the city challenges the trial court's determination that Mr. Kellard constituted a "prevailing party" entitled to attorneys' fees under former R.C. 9.68(B). It contests both the power of the court to award fees (in light of the justiciability problems delineated above) and the merits of the trial court's determination that Mr. Kellard "prevailed." We address the two arguments in turn and find this portion of the city's first assignment of error unavailing.

## A.

{¶17} First, the city insists that if we reverse the trial court's grant of declaratory and injunctive relief on the grounds that Mr. Kellard did not present a justiciable controversy (as we just have), we must also revoke his prevailing party status—and likewise, any entitlement to attorneys' fees. But this conclusion does not

automatically follow: we must still inquire whether an independent, justiciable controversy existed on the issue of whether Mr. Kellard "prevail[ed] in [his] challenge" to H.R. 5.1 and Admin. Reg. 49. *See* former R.C. 9.68(B).

{¶18} The previous version of R.C. 9.68, in effect when Mr. Kellard filed his suit, provided in relevant part:

(A) The individual right to keep and bear arms, being a fundamental individual right that predates the United States Constitution and Ohio Constitution, and being a constitutionally protected right in every part of Ohio, the general assembly finds the need to provide uniform laws throughout the state regulating the ownership, possession, purchase, other acquisition, transport, storage, carrying, sale, or other transfer of firearms, their components, and their ammunition. Except as specifically provided by the United States Constitution, Ohio Constitution, state law, or federal law, a person, without further license, permission, restriction, delay, or process, may own, possess, purchase, sell, transfer, transport, store, or keep any firearm, part of a firearm, its components, and its ammunition.

(B) In addition to any other relief provided, the court shall award costs and reasonable attorney fees to any person, group, or entity that prevails in a challenge to an ordinance, rule, or regulation as being in conflict with this section.

Under former R.C. 9.68(B), a party who "prevails in a challenge" to a policy conflicting with R.C. 9.68(A) "shall" be awarded "costs and reasonable attorney fees." Neither "prevails" nor "challenge" is defined by the statute, which means that we must accord each word "its plain and ordinary meaning." *Anderson v. Barclay's*

10

*Capital Real Estate, Inc.*, 136 Ohio St.3d 31, 2013-Ohio-1933, 989 N.E.2d 997, ¶ 16. In *Oberlin,* the Ninth District turned to Black's Law Dictionary to define "prevail" as "[t]o obtain the relief sought in an action; to win a lawsuit[.]" *Oberlin,* 2017-Ohio-36, 72 N.E.3d 676, at ¶ 28. It likewise defined "challenge" as "[a]n act or instance of formally questioning the legality or legal qualifications of a person, action or thing[.]" *Id.* It then held that, even where the plaintiff did *not* present a justiciable controversy on the lawfulness of the underlying ordinances, the plaintiff might still be entitled to attorneys' fees by virtue of having achieved the "relief sought" (i.e., the repeal of the ordinances). *Id.* at ¶ 33. It considered the issue of attorneys' fees to be independently justiciable, and remanded the case for fact-finding on causation. *Id.*

{¶19} We find the *Oberlin* court's reasoning on the independent justiciability of a former R.C. 9.68 claim for attorneys' fees persuasive. Mr. Kellard certainly engaged in an act "formally questioning" the legality of the city's policies when he filed his complaint, and a controversy existed as to his resulting entitlement to attorneys' fees. Moreover, Mr. Kellard alleged that he suffered past damages as a result of the city's unlawful policies sufficient to trigger monetary relief, creating "adverse legal interests" between the parties (particularly when the city agreed in its answer that he had suffered some damages). *See Kincaid,* 128 Ohio St.3d 322, 2010-Ohio-6036, 944 N.E.2d 207, at ¶ 10. The fact that declaratory and injunctive relief may be unavailable for a particular plaintiff does not strip justiciability of "an action where a person *has been* injured and seeks damages." (Emphasis added.) *Heartland of Urbana OH, LLC v. McHugh Fuller Law Group, PLLC*, 2016-Ohio-6959, 72 N.E.3d 23, ¶ 49 (2d Dist.).

{¶20} In conclusion, although we hold that the trial court lacked subject matter jurisdiction over Mr. Kellard's claim for injunctive and declaratory relief on

the propriety of the city's former policies after the city revised the policies, we find the trial court enjoyed subject matter jurisdiction to adjudicate Mr. Kellard's status as one who "prevails in a [R.C. 9.68] challenge" and is therefore entitled to attorneys' fees. *See* former R.C. 9.68(B). We must next consider the merits of the trial court's decision that Mr. Kellard did, in fact, "prevail in [his] challenge."

B.

{¶21} The trial court held that the city changed its policies "in response to the lawsuit filed by Timothy Kellard," rendering Mr. Kellard a "prevailing party" entitled to attorneys' fees. We need not defer to this finding on appeal, since "the determination of a plaintiff as the prevailing party is subject to a de novo standard." *Thomas v. Cleveland.* 176 Ohio App.3d 401, 2008-Ohio-1720, 892 N.E.2d 454, ¶ 23 (8th Dist.); *see Simbo Properties, Inc. v. M8* Realty, LLC, 2019-Ohio-4361, 149 N.E.3d 941, ¶ 36 (8th Dist.) ("Although the award of attorney fees is subject to review under an abuse of discretion standard, the determination of a plaintiff as the 'prevailing party' is subject to review under a de novo standard."). But before we debate issues of causation, we must first address a novel issue in the First District: how to properly define a party who "prevails in a challenge" under former R.C. 9.68(B).

{¶22} In drafting former R.C. 9.68, the General Assembly chose precise language that is—so far as we can tell—unique in the Ohio Revised Code. It awarded "costs and reasonable attorney fees" not to the "prevailing party" (a commonly-used phrase in other Ohio and federal statutes), but instead to any party who "prevails in a challenge" under former R.C. 9.68(A). *See* former R.C. 9.68(B); *contrast* R.C. 3127.42(A) ("A court shall award the prevailing party in an action to enforce a child custody determination * * * necessary and reasonable expenses * * * ); R.C. 1925.15

12

("The actual disbursements of the prevailing party for filing fees, execution fees, and other court fees may be allowed as costs."); R.C. 2335.39(B)(1) (awarding fees to "prevailing eligible party"); R.C. 119.092(B)(1) (same). When interpreting and applying a fee-shifting statute, "we must give effect to the wording of the statute." *Bergman Group v. OSI Dev., LTD*, 12th Dist. Butler No. CA2009-12-080, 2010-Ohio-3259, ¶ 72. To interpret former R.C. 9.68, then, we must specifically inquire what it means for a plaintiff (including one whose underlying claim is moot) to "prevail in a challenge" under former R.C. 9.68(A).

{¶23} Once again, we turn to *Oberlin* for guidance. There, the Ninth District held that a party prevails in a former R.C. 9.68 challenge when evidence suggests that "but for this lawsuit, the [unlawful and repealed] ordinances might well still be in effect." *Oberlin,* 2017-Ohio-36, 72 N.E.3d 676 at ¶ 33. The *Oberlin* court rejected the proposition that a party must receive a formal court order in order to "prevail" in its R.C. 9.68 "challenge." *Id.* Instead, it considered the key question to be "whether [the plaintiff] 'obtained the relief sought' by virtue of filing the lawsuit," including repeal of the offending policies or ordinances "as [a] direct result of the lawsuit." *Id.* The *Oberlin* court justified its broad interpretation of a party who "prevails in a challenge" on the grounds of the legislative intent "to deter municipalities from maintaining ordinances that conflict with, or impose additional requirements on the aspects of gun ownership enumerated in subsection (A)." *Oberlin* at ¶ 30. "If municipalities could simply avoid any exposure for fees under the statute by repealing the ordinance at issue after suit was filed but prior to judgment," the court reasoned, "a person or entity challenging the ordinance would always lose." *Id.* After finding that the *Oberlin* plaintiff tendered "some evidence * * * that, but for this lawsuit, the ordinances might well still be in effect," the Ninth District overruled the

trial court's grant of summary judgment against the plaintiff and remanded the case for additional fact-finding on causation. *Id.* at ¶ 33.

{¶24} We are persuaded that *Oberlin*'s causal approach to the question of whether a party "prevails in a challenge" under former R.C. 9.68(B) offers the correct reading of the statute. A plaintiff who filed a former R.C. 9.68 suit, then found her claim for declaratory and injunctive relief mooted by the defendant's voluntary action, could still "prevail in [her] challenge" if she could show that her lawsuit represented the but-for cause of the change. Such an individual would then be entitled to "costs and reasonable attorney fees." *See* former R.C. 9.68(B).

{¶25} We pause to note that this reading of former R.C. 9.68 is rendered largely obsolete by the General Assembly's latest amendments to the statute, pursuant to which "the court shall award reasonable expenses" if the offending "ordinance, rule, regulation, resolution, practice, or action or the manner of its enforcement is repealed or rescinded after the civil action was filed but prior to a final court determination of the action." *See* R.C. 9.68(B), (B)(2). The new R.C. 9.68 essentially eliminates the need for a plaintiff in Mr. Kellard's situation to show causation—but it did not come into effect until after his suit was filed.

{¶26} Here, the city argues that its evidence of progress toward revision of H.R. 5.1 and Admin. Reg. 49 prior to Mr. Kellard's lawsuit forecloses a finding of but-for causation under former R.C. 9.68, and the trial court therefore erred in its decision to award fees. The city submitted records of previous drafts of the policies and emails stretching back to 2017, which discussed the need for revisions and proposed changes that would have aligned the policies with R.C. 2923.1210.

{¶27} But the city's inching towards compliance with Ohio law is not the same as *actual* compliance with Ohio law—particularly when that progress took

14

place behind closed doors. The city never notified its employees of its intent not to enforce H.R. 5.1 and Admin. Reg. 49. Nor did it offer an explanation for the two-year delay between passage of R.C. 2923.1210 and its revision of the offending policies. Mr. Kellard's case for but-for causation would certainly be stronger if he had notified his employer of his concerns prior to filing suit, and the city had rebuffed his request. However, R.C. 2923.1210 and R.C. 9.68 place the onus on the city—and not its employees—to ensure compliance with Ohio law. We can of course imagine evidence that the city could have marshalled to defeat the causation claim, but it simply doesn't appear in this record. Therefore, we agree with Mr. Kellard that two years represents an unreasonable amount of time for the city to neglect the necessary revisions, and that the city's prompt action to amend the policies in the aftermath of his suit weighs heavily in favor of a finding of causation.

{¶28} In conclusion, we find that Mr. Kellard satisfies the standard for a party who "prevails in a challenge" under former R.C. 9.68(B), and the trial court correctly found Mr. Kellard to be entitled to "costs and reasonable attorney fees." We overrule the portion of the city's first assignment of error challenging Mr. Kellard's overarching entitlement to costs and fees.

IV.

{¶29} Having determined that Mr. Kellard "prevail[ed] in a challenge" under former R.C. 9.68, we must now consider whether the trial court erred in its assessment of "reasonable attorney fees." *See* former R.C. 9.68(B). Both parties to this appeal contest the trial court's award. In its second assignment of error, the city asserts that the trial court "erred in granting damages, attorneys' fees, and costs." In his two cross-assignments of error, Mr. Kellard counters that the trial court should have awarded greater attorneys' fees and damages. We review all three assignments

15

for abuse of discretion. *See Hensel v. Childress,* 2019-Ohio-3934, 145 N.E.3d 1159, ¶ 15 (1st Dist.) ("An award of attorney fees is reviewed for an abuse of discretion.").

A.

{¶30} In his first assignment of error on cross-appeal, Mr. Kellard contends that the trial court abused its discretion by awarding less than his requested amount of attorneys' fees, specifically targeting the court's downward adjustment from the hourly rates requested by counsel.

{¶31} The Ohio Supreme Court embraces a "lodestar" approach to attorney fee awards, under which "the starting point for determining attorney fees is * * * ' "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." ' " *Phoenix Lighting Group, LLC v. Genlyte Thomas Group, LLC*, 160 Ohio St.3d 32, 2020-Ohio-1056, 153 N.E.3d 30, ¶ 10, quoting *Bittner v. Tri-County Toyota, Inc.*, 58 Ohio St.3d 143, 145, 569 N.E.2d 464 (1991), quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). A reasonable hourly rate reflects the "prevailing market rate in the relevant community, given the complexity of the issues and the experiences of the attorney." (Internal citation omitted.) *Id.* at ¶ 11, quoting *State ex rel. Harris v. Rubino*, 156 Ohio St.3d 296, 2018-Ohio-5109, 126 N.E.3d 1068, ¶ 4. A trial court may benchmark a reasonable rate "against rates recently approved for equally experienced attorneys in comparably complex cases." *Rubino* at ¶ 4.

{¶32} Counsel for Mr. Kellard requested an hourly rate based on the Laffey Matrix (which benchmarks federal court rates in Washington, D.C.) and a previous Sixth Circuit case where counsel received fees. However, the trial court held that the requested attorneys' fees exceeded the threshold of reasonableness, reducing the hourly rate based on "the per hour fee of a similar gun rights case that was handled

16

by an attorney with expertise in the gun rights field." Mr. Kellard complains that the trial court's analysis was too "thin" to support a downward departure from the requested rates, both because the trial court "did not indicate as to which case it was referring" and because—in Mr. Kellard's view—this "was not a 'gun rights case.' "

{¶33} Any confusion on Mr. Kellard's part seems a bit exaggerated given that the case referenced by the trial court was *Buckeye Firearms Foundation v. City of Cincinnati,* Hamilton C.P. No. A-1803098, 2019 WL 11731082 (February 11, 2019), a high-profile case which the trial court decided just two months before its hearing on fees for Mr. Kellard's claim. Indeed, the city argued below that *Buckeye Firearms* presented an appropriate (and arguably generous) benchmark for fees, because it was a local R.C. 9.68 case brought by experts in R.C. 9.68 litigation and decided by the same judge. Counsel for Mr. Kellard did not object to this line of argument, and even conceded that his office "didn't have [everyday] experience" in R.C. 9.68 litigation prior to bringing this case.

{¶34} Moreover, Mr. Kellard's insistence on appeal that this is not a "gun rights case" strains credulity in light of comments made by counsel below. During the hearing on attorney fees, Mr. Kellard's counsel invited the court to *enhance* the fees given the controversial nature of this matter as a "gun rights case," one that risked counsel's firms being labeled as "gun extremist[s]" and losing clients. It is hardly fair for Mr. Kellard's counsel to tell the trial court that heightened fees are justified in this "gun rights case," then turn around on appeal and fault the trial court for treating the case as such.

{¶35} Under *Phoenix,* the trial court acted within its discretion in benchmarking a "reasonable attorney fee" in this case against another "fee customarily charged in the locality for similar legal services." *Phoenix,* 160 Ohio

17

St.3d 32, 2020-Ohio-1056, 153 N.E.3d 30, at ¶ 12, quoting Prof.Cond.R. 1.5(a). We see no reason to disallow the trial court's use of a two-month-old case, heard by the same court, involving nearly identical claims and *more* experienced counsel, as a benchmark. Therefore, we overrule Mr. Kellard's first cross-assignment of error and uphold the trial court's determination that the reasonable hourly wage in this case was $270 per hour for any work not involving a court visit and $335 per hour for work involving a court appearance.

B.

{¶36} Our assessment of attorneys' fees in this case does not end with our decision to overrule Mr. Kellard's first cross-assignment of error, because the city raises its own challenge to the propriety of the trial court's award. Below, the city argued that the number of hours Mr. Kellard's counsel expended on this case was unreasonable, in part because he "received the relief he requested before any orders were issued." It recycles this issue on appeal by contesting the trial court's fee award and asserting that Mr. Kellard did not properly "prevail" in his claims for injunctive and declaratory relief. Accordingly, we must review both components of the trial court's attorneys' fees award: the "reasonable hourly rate" unsuccessfully contested by Mr. Kellard, and the "hours reasonably expended" piece that completes the lodestar calculation. *See Phoenix Lighting Group* at ¶ 10.

{¶37} "Ohio has long adhered to the 'American rule' with respect to recovery of attorney fees: a prevailing party in a civil action may not recover attorney fees as a part of the costs of litigation." *Wilborn v. Bank One Corp.*, 121 Ohio St.3d 546, 2009-Ohio-306, 906 N.E.2d 396, ¶ 7, citing *Nottingdale Homeowners' Assn., Inc. v. Darby,* 33 Ohio St.3d 32, 33-34, 514 N.E.2d 702 (1987), and *State ex rel. Beebe v. Cowley*, 116 Ohio St. 377, 382, 156 N.E. 214 (1927). An exception to the rule exists

18

for statutes that "specifically provid[e] for the losing party to pay the prevailing party's attorney fees." *Id.* Former R.C. 9.68 is one of these 'fee-shifting' statutes. Yet as explained above, it employs unique language to describe its fee-shifting function. The General Assembly's use of the phrase "prevails in a challenge" (rather than the more common "prevailing party" language) helps to justify Mr. Kellard's entitlement to attorneys' fees in the first place. We agree with the *Oberlin* court that the legislature intended the city to face *some* penalty for maintaining policies in violation of former R.C. 9.68, and for Mr. Kellard to receive *some* reimbursement for fees incurred in a challenge those the policies.

{¶38} But R.C. 9.68's fee-shifting language is not boundless: it does not allow a litigant to keep the billing meter running when the plaintiff's underlying claim is moot. Former R.C. 9.68(B) entitles a plaintiff who "prevails in a challenge" to "reasonable attorney fees." Interpreting this language in context of the American rule's presumption that parties to civil actions pay their own fees, we hold that attorney fees are "reasonable" under former R.C. 9.68(B) only so far as they are incurred in pursuit of a justiciable claim. To put it another way, after an R.C. 9.68 plaintiff "prevails in [his] challenge" and his underlying claim becomes moot, hours billed in pursuit of additional, improper relief are not "reasonable." *See* former R.C. 9.68(B); *Bergman*, 12th Dist. Butler No. CA2009-12-080, 2010-Ohio-3259, at ¶ 72 (when applying a fee-shifting statute, "we must give effect to the wording of the statute."). These additional hours are not "hours reasonably expended" in pursuit of an R.C. 9.68 claim, and must not be factored into a trial court's lodestar calculation. *See Phoenix Lighting Group,* 160 Ohio St.3d, 2020-Ohio-1056, 153 N.E.2d 30, at ¶ 10; *Miller v. Grimsley,* 197 Ohio App.3d 167, 2011-Ohio-6049, 966 N.E.2d 932, ¶ 14 (10th Dist.) ("Calculation of the lodestar necessarily requires the trial court to

19

exclude any hours that were unreasonably expended, e.g., hours that were redundant, unnecessary or excessive in relationship to the work done.").

{¶39} We have already determined that once the city repealed its offending policies, the trial court lost subject matter jurisdiction to award injunctive or declaratory relief for Mr. Kellard's underlying claim. At that point, Mr. Kellard "prevail[ed]" in his former R.C. 9.68 "challenge," and the only additional relief that the trial court could provide was an award of damages, costs and attorneys' fees. *See* former R.C. 9.68(B). But beyond that point, Mr. Kellard's decision to seek "a court order which merely restates the mandates of the Ohio Revised Code" was made at his own risk—and on his own dime. *Smolak,* 10th Dist. Franklin No. 07AP-373, 2007-Ohio-4671, at ¶ 14. Hours billed in pursuit of Mr. Kellard's non-justiciable permanent injunction were "redundant, unnecessary [and] excessive" under these circumstances, and must be excised from the trial court's award. *See Grimsley* at ¶ 14; *Rubino*, 156 Ohio St.3d 296, 2018-Ohio-5109, 126 N.E.2d 1068, at ¶ 5 ("We * * * exclude 'hours that are excessive, redundant, or otherwise unnecessary.' "), quoting *Hensley*, 461 U.S. at 434, 103 S.Ct. 1933, 76 L.Ed.2d 40.

{¶40} Accordingly, we hold that the trial court abused its discretion when it calculated attorneys' fees based on an unreasonably high number of hours expended in pursuit of this particular former R.C. 9.68 claim. Mr. Kellard prevailed in his challenge to the city's policies on August 19, 2019, the date by which all parties agree that the city's policies complied with R.C. 2923.1210. All hours billed prior to and on that date were reasonably expended on his claim. We have reviewed counsel's filings for attorney fees and calculate the number of hours expended prior to and on August 19 to be 18.4 for Mr. Phillips (14 out-of-court, 4.4 in court), 44.5 for Mr. Hackett

(43.8 out-of-court, 0.7 in court), and 33.8 for Mr. Stoker (31.8 out-of-court, 2.0 in court).

{¶41} However, hours billed between August 20, 2019, and October 15, 2019—when the trial court entered its order declaring Mr. Kellard a "prevailing party" and setting the date for an attorney fee hearing—were unreasonable hours incurred in pursuit of a needless and non-justiciable injunction. Hours billed between August 20 and October 15 should not have been included in the trial court's lodestar calculation, and must be deducted from the trial court's award.

{¶42} We note that the city opposed Mr. Kellard's motion for attorney fees, which was filed in response to the trial court's October 15 order. Because the proper award of attorney fees presented a justiciable part of Mr. Kellard's R.C. 9.68 claim— indeed, the only justiciable issue that survived repeal of the city's policies on August 19, 2019—we hold that hours spent litigating the attorney fee award from October 16 and onward were reasonable. Counsel's filings with the trial court indicate that, on and after October 16, Mr. Phillips billed 1.7 out-of-court hours, Mr. Hackett billed no hours, and Mr. Stoker billed 4 out-of-court hours.

{¶43} In sum, we sustain the city's second assignment of error in part and modify the trial court's grant of attorneys' fees. *See Bergman,* 12th Dist. Butler No. CA2009-12-080, 2010-Ohio-3259, at ¶ 82 (modifying the trial court's fee award on appeal based on counsel's "itemization of fees"). Mr. Phillips properly billed 20.1 total hours in this case: 18.4 before and on August 19, and 1.7 from October 16 and onward. 4.4 of these hours were spent on court appearances; the rest on other matters. Mr. Hackett properly billed 44.5 total hours in this case, all before and on August 19. Just 0.7 of these hours were spent on court appearances; the rest on other matters. Mr. Stoker properly billed 37.8 total hours in this case: 33.8 before

21

and on August 19, and 4 from October 16 and onward. 2 of these hours were spent on court appearances; the rest on other matters. For the reasons explained above, we find that the trial court's calculation of the reasonable hourly rate at $335 for court appearances and $270 for out-of-court matters was proper, and we leave that portion of the attorney fee award undisturbed. Mr. Phillips is entitled to $5,713 total fees for this case; Mr. Hackett is entitled to $12,060.50; Mr. Stoker is entitled to $10,336.[2]

## V.

**{¶44}** Finally, in his second cross-assignment of error, Mr. Kellard argues that the trial court abused its discretion by declining to award him $5,000 in damages "commensurate to a class representative fee."

**{¶45}** Mr. Kellard cites no caselaw for his proposition that a class representative fee is appropriate in an R.C. 9.68 case, nor does he attempt to argue that his claim meets the Civ.R. 23 requirements for a class action. *See Safi v. Cent. Parking Sys. of Ohio, Inc.,* 2015-Ohio-5274, 45 N.E.3d 249, ¶ 14 (1st Dist.) ("[T]he party bringing the class action must affirmatively demonstrate that each requirement of Civ.R. 23 has been satisfied."). Instead, Mr. Kellard insists that because "[f]irearms are a polarizing topic," his decision to bring suit risked "additional scrutiny from friends, co-workers and his supervisors," and may have even "exposed him[] to the enterprising criminal waiting for him to leave his car so as to break-in with the hopes of discovering a firearm." These "risks," Mr. Kellard posits, "should

---

[2] In the conclusion of his brief, Mr. Kellard questions the trial court's denial of attorneys' fees for this appeal, but he fails to present any assignment of error on this score or develop this argument. "Pursuant to App.R. 12(A)(1)(b), courts of appeal must 'determine an appeal on its merits on the assignments of error set forth in the briefs under App.R. 16.' " *Timoneri v. NorthSteppe Realty, Inc.,* 2016-Ohio-5901, 71 N.E.3d 630, ¶ 60 (10th Dist.), quoting App.R. 12(A)(1)(b). "Thus, generally, courts of appeal will rule on assignments of error only, not mere arguments." *Id.,* citing *Thompson v. Thompson,* 196 Ohio App.3d 764, 2011-Ohio-6286, 965 N.E.2d 377, ¶ 65 (10th Dist.). Therefore, we decline to disturb the trial court's decision not to award fees for this appeal.

be rewarded" with a $5,000 fee—which he calculates as one dollar per every city employee.

{¶46} As the trial court recognized below, there is simply no legal basis for Mr. Kellard's requested class representative fee—in a case that is not even brought pursuant to Civ.R. 23. Even if the risks Mr. Kellard imagines were legally relevant to a class action determination, he provided no substantiation in the record to take his claims out of the realm of speculation. Accordingly, we overrule Mr. Kellard's second cross-assignment of error and affirm the trial court's calculation of his damages at $702.96.

VI.

{¶47} Having determined that the trial court exceeded its subject matter jurisdiction by granting injunctive and declaratory relief for a non-justiciable claim, we sustain the city's two assignments of error in part and overrule them in part, reverse the trial court's grant of a permanent injunction and declaratory judgment that the City's former policies were unlawful, and modify the trial court's fee award as indicated above. Mr. Phillips is entitled to $5,713 total fees for this case; Mr. Hackett is entitled to $12,060.50; Mr. Stoker is entitled to $10,336. Finally, we overrule Mr. Kellard's two cross-assignments of error.

Judgment accordingly.

**MYERS, P.J.,** and **WINKLER, J.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.