[Cite as *Dornette v. Green Bldg. Consulting, L.L.C.*, 2025-Ohio-4944.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

DAVID DORNETTE,                   :        APPEAL NO.    C-240689
                                           TRIAL NO.     24/CV/06262
    Plaintiff-Appellant,      :

vs.                               :

GREEN BUILDING CONSULTING LLC,    :        *JUDGMENT ENTRY*

    Defendant,                :

    and                       :

REDKNOT HOLDINGS, LLC,            :

    Defendant-Appellee.       :


This cause was heard upon the appeal, the record, the briefs, and arguments.

For the reasons set forth in the Opinion filed this date, the judgment of the trial court is affirmed.

Further, the court holds that there were reasonable grounds for this appeal, allows no penalty, and orders that costs be taxed under App.R. 24.

The court further orders that (1) a copy of this Judgment with a copy of the Opinion attached constitutes the mandate, and (2) the mandate be sent to the trial court for execution under App.R. 27.


**To the clerk:**

**Enter upon the journal of the court on 10/29/2025 per order of the court.**


**By:**_____
        **Administrative Judge**

[Cite as *Dornette v. Green Bldg. Consulting, L.L.C.*, 2025-Ohio-4944.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| DAVID DORNETTE, | : | APPEAL NO. C-240689 |
| | | TRIAL NO. 24/CV/06262 |
| Plaintiff-Appellant, | : | |
| vs. | : | |
| | | *O P I N I O N* |
| GREEN BUILDING CONSULTING LLC, | : | |
| Defendant, | : | |
| and | : | |
| REDKNOT HOLDINGS, LLC, | : | |
| Defendant-Appellee. | : | |

Civil Appeal From: Hamilton County Municipal Court

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: October 29, 2025

*Taft Stettinius & Hollister LLP*, *Nicholas J. Pieczonka* and *William E. Braff*, for Plaintiff-Appellant,

*Schwander Law Firm LLC* and *Nicholas W. Schwandner*, for Defendant-Appellee.

**MOORE, Judge.**

**{¶1}** Plaintiff-appellant David Dornette appeals the trial court's judgment denying his motion for summary judgment and granting the cross-motion for summary judgment in favor of defendant-appellee Redknot Holdings, LLC ("Redknot"), arguing that his claim for replevin against Redknot was not barred by the parties' previous settlement agreement. The settlement agreement, however, explicitly provided that each party released the other from future claims.

**{¶2}** Dornette also challenges the trial court's judgment granting Redknot's request for attorney's fees on Redknot's crossclaim against Dornette for breaching the settlement agreement, arguing that the American Rule requires each party to cover their own attorney's fees. The trial court, however, awarded the fees as compensatory damages, not as costs.

**{¶3}** We, therefore, affirm the trial court's judgment.

## I. Factual and Procedural History

**{¶4}** Dornette contracted (the "Construction Contract") with Redknot to build a house (the "Property"). Redknot then hired defendant Green Building Consulting LLC ("GBC") to perform work on the Property to obtain a certification for a "platinum LEED for Homes Rating" ("LEED"). The section of the Construction Contract pertaining to this certification stated that there was a consulting fee that covered payment for the LEED registration fee, necessary documentation services, payment of the certification fee, and "ordering and delivery of certificates." It also stated that the price to build the home did not include the cost for making modifications to the Property that may be required to obtain the LEED certification. The section further stated: "While [Redknot] will work diligently to obtain the LEED [Redknot] makes no guarantees that the desired LEED certification level will be

3

obtained."

### A. The Dispute, Arbitration, and the Settlement Agreement

{¶5}   A dispute arose between the parties. Dornette asserted the construction of the Property was defective. Redknot, in turn, claimed that Dornette stopped paying for its work.

{¶6}   In April 2023, Dornette filed a demand for arbitration. Redknot responded by filing a counterclaim in the arbitration. In May 2023, Redknot recorded a mechanic's lien against the Property. Prior to the arbitration hearing, the parties engaged in mediation.

{¶7}   The mediation was successful, and in January 2024, Redknot and Dornette executed a settlement agreement that "resolve[d] all disputes between them related to or arising from the Contract, Property, Project, Dispute, Lien, and Arbitration," and the parties agreed to dismiss their respective arbitration actions with prejudice. The settlement agreement contained a release clause, which provided that the parties bore no further financial responsibility to one another, and each were to bear their own attorney's fees, costs, and expenses. Dornette agreed to release Redknot of all "claims, demands . . . breaches of contract, litigation, causes of action, warranties, breaches of duty or any relationship . . . whether sounding in law, equity, contract . . . past, present and future." Likewise, Redknot agreed to release Dornette of the same. Redknot, however, was not released "from any latent defects or latent warranty items on the Property."

{¶8}   The release applied to the parties' respective partners, employees, agents, representatives, subsidiaries, affiliated business entities, etc. The agreement provided, "This release shall not apply to any breach of this Agreement, which claims are reserved." The agreement also contained an integration clause that stated that the

document constituted the entire agreement between the parties, and any amendments to the agreement must be made in a separate writing.

**{¶9}** Prior to the conclusion of the arbitration, Dornette requested the LEED materials from GBC. Dornette received an e-mail from GBC in August 2023, which stated:

Good afternoon Dan!

Apologies for the delay in response. I think I may have already mentioned, but Redknot has authorized us to use/share the information we already have on file to close out this project, including the data from the pre-drywall inspection. Are you still intending to hit Platinum? Please fill out and send back this info sheet so Accounting (copied) can get the revised contract out and set up the new billing party in our system.

I've also copied Kristi O'Conner, who will be managing the remainder of this project. Upon receipt of the updated agreement, we will release all of the relevant project documentation and set up a quick call to run through the current path on the checklist, then we should schedule the final inspection to see where the project stands for corrections or points needed.

### B. Dornette files a claim for replevin.

**{¶10}** After the settlement agreement was executed, Dornette again requested the LEED materials—this time from Redknot, which refused the request. In March 2024, Dornette filed a claim in the Hamilton County Municipal Court for replevin against Redknot and GBC regarding the LEED materials. On July 15, 2024, Dornette voluntarily dismissed his complaint against GBC without prejudice.

5

**{¶11}** Dornette asserted in his complaint against Redknot that he paid for the LEED materials, and thus, he was entitled to them. Paragraph 18 of the complaint listed the materials Dornette sought:

[GBC] performed this work and is in possession of the LEED certification materials, including but not limited to: registration documents, preliminary sustainable design strategy evaluations, design investigation and strategy development documents, confirmed sustainable design strategy documents, sustainable design integration documents, design documents, LEED inspection reports, LEED progress reports, LEED checklists, LEED certifications, LEED energy modeling, and energy modeling-reports.

**{¶12}** Redknot filed an answer and counterclaim against Dornette, alleging that Dornette breached the settlement agreement by filing his claim for replevin, which was a failure to act in good faith and fair dealing and caused Redknot to incur attorney's fees, costs, and expenses.

**The parties file cross-motions for summary judgment.**

**{¶13}** In June 2024, Dornette filed a motion for immediate possession of the LEED materials and for summary judgment against Redknot on its counterclaim. Dornette asserted in his motion that he paid for the LEED materials in full, and they belonged to him. He further argued that Redknot's claim for attorney's fees was barred by the American Rule, which, absent the existence of an exception, generally bars litigants from recovering attorney's fees in civil actions.

**{¶14}** Redknot responded with a combined motion for summary judgment on its counterclaim and opposition to Dornette's summary-judgment motion. Redknot asserted that the Construction Contract did not give Dornette an ownership interest

6

in the LEED materials as they were "underlying work product generated during the process of seeking LEED certification," and thus, a "service" that was provided as a part of the scope of the work it did.

{¶15} Citing to the affidavit of Redknot's president, Mark Pottebaum, Redknot further argued that, even if Dornette had an ownership interest in the LEED materials, Dornette never paid for them. Redknot added that Dornette could not produce proof of his claim that he had paid for the materials. It refuted Dornette's assertion that the settlement agreement was evidence that Dornette paid for the materials, as the agreement provided that each party was released from further financial obligation to the other. Redknot further argued that Dornette's replevin claim had been released in the arbitration settlement and thus, bringing the action for replevin was a breach of that settlement agreement.

{¶16} As to its claim for attorney's fees, Redknot asserted that Dornette's replevin action violated the release clause of the settlement agreement, and the attorney's fees that Redknot sought were not costs, but compensatory damages.

{¶17} The trial court granted summary judgment in Redknot's favor and awarded Redknot $5,313.47 in compensatory damages. The court denied Dornette's motion, reasoning that Dornette's claim was barred by the settlement agreement.

{¶18} This appeal followed.

## II. Analysis

{¶19} In his sole assignment of error, Dornette argues that the trial court erred by denying his motion for summary judgment and granting Redknot's cross-motion on the basis that his replevin claim was barred by the parties' settlement agreement. Dornette further argues that the trial court's award of attorney's fees to Redknot was contrary to the American Rule.

7

**{¶20}** An appellate court conducts a de novo review of summary-judgment decisions. *WSB Rehab. Servs. v. Cent. Accounting Sys.*, 2022-Ohio-2160, ¶ 22 (1st Dist.). A de novo review requires the appellate court to conduct an independent review of the evidence before the trial court without deference to the trial court's decision. *Doe v. Marker*, 2003-Ohio-6230, ¶ 13 (11th Dist.). Under Civ.R. 56(C), summary judgment is proper when the moving party establishes that (1) no genuine issue of any material fact remains, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion and, construing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. *WSB* at ¶ 22.

### A. Dornette's replevin action was barred by the settlement agreement.

**{¶21}** On appeal, Dornette argues that he paid for LEED materials, and, as such, he was entitled to sue Redknot to recover those items. Dornette asserts that his replevin action was in response to a breach of the settlement agreement when Redknot refused to give him the LEED materials that he sought.

**{¶22}** Replevin is a claim against a person who has wrongfully taken or detained goods or chattels from a person who owns or is entitled to repossession of goods or chattels; if the claimant prevails, he or she may recover those goods or chattels. *Brown v. City of Cincinnati*, 2020-Ohio-5418, ¶ 11 (1st Dist.).

### Dornette failed to show that a genuine issue of material fact existed in his replevin action.

**{¶23}** The trial court granted summary judgment in Redknot's favor based on the release clause in the settlement agreement. Dornette contends that the settlement agreement is inapplicable to his replevin action because the settlement agreement

resolved issues "in dispute." He posits that, because GBC acknowledged there was "information" in its possession, and Redknot allegedly authorized the release of that information, the LEED issue was not in dispute. He asserts that, therefore, Redknot should have turned over the materials when he requested them after the settlement agreement was executed. He further asserts that he had no reason to suspect Redknot would withhold the materials, thus he was entitled to take legal action to "enforce the settlement agreement" due to Redknot's "misconduct."

### The settlement agreement resolved all claims between the parties not expressly reserved.

**{¶24}** The record does not support Dornette's claim that the settlement agreement preserved claims related to the LEED materials. The plain language of the settlement agreement states that each party agreed to release the other from all claims, including future, unforeseeable claims. Nothing in the agreement reserved claims related to the LEED materials or liability for failure to provide the materials.

**{¶25}** Dornette cites *Reo v. Allegiance Admrs., LLC*, 2018-Ohio-2464, ¶ 20 (11th Dist.), for the proposition that Ohio law "disfavors enforcing releases that bar liability for future unlawful conduct." Dornette's argument misstates the law. This proposition regards a public-policy argument that applies to future *tortious* conduct, which is inapplicable here as his complaint was for replevin. *See id.* Dornette's assertion that nothing in the settlement agreement "strip[ped]" him of his ability to assert property rights is also meritless. The trial court's judgment does not, as he claims, set a precedent that would bar him from ever bringing any claim against Redknot, as the agreement explicitly preserved any claim for "latent defects or latent warranty items on the Property." Dornette, meanwhile, fails to show how the LEED materials fall under this category.

**{¶26}** Based on the foregoing, the trial court did not err by finding that the settlement agreement barred Dornette's replevin action.

## B. *A prevailing party may recover attorney's fees in a breach-of-settlement-agreement claim as compensatory damages.*

**{¶27}** To succeed on a breach-of-contract claim, a party must establish (1) the existence of a contract, (2) a breach of that contract, and (3) damages resulting from that breach. *DATFT LLC v. AM Reflections Cleaning Servs. LLC*, 2023-Ohio-1348, ¶ 19 (1st Dist.). Here, there was no genuine issue of material fact that Dornette's execution of the settlement agreement released Redknot from all "claims, demands . . . breaches of contract, litigation, causes of action, warranties, breaches of duty or any relationship . . . whether sounding in law, equity, contract . . . past, present and future." The agreement specified that the only claims excluded from this broad release were claims "from any latent defects or latent warranty items on the Property." Claims related to LEED materials were not part of this carve-out. Therefore, the trial court did not err by entering judgment in Redknot's favor.

### Civil Suits and the American Rule

**{¶28}** Generally, we review an award of attorney's fees for an abuse of discretion. *Kellard v. City of Cincinnati*, 2021-Ohio-1420, ¶ 29 (1st Dist.). A trial court abuses its discretion when its decision is unreasonable, unconscionable, or arbitrary. *Niehaus v. Durrani*, 2023-Ohio-4818, ¶ 34 (1st Dist.), citing *Murphy v. Carrollton Mfg. Co.*, 61 Ohio St.3d 585, 591 (1991). When an appeal presents this court with a question of law, however, we review an award of attorney's fees de novo. *Roberts v. Mike's Trucking, Ltd.*, 2014-Ohio-766, ¶ 45 (12th Dist.) ("We review de novo the trial court's legal analysis underpinning the award of attorney's fees but otherwise review the fee award for an abuse of discretion.").

**{¶29}** Under the American Rule, a prevailing party in a civil action is generally not entitled to recover attorney's fees as a part of the costs of litigation absent a finding that the losing party acted in bad faith, or the statute or contract at issue provides for attorney's fees. *See Kellard* at ¶ 37; *Weckel v. Cole + Russell Architects*, 2019-Ohio-3069, ¶ 7 (1st Dist.). Dornette is correct that this court has *generally* followed the American Rule. It is also the case here that there is no fee-shifting provision in the settlement agreement and there does not appear to be an applicable attorney-fee statute.

**{¶30}** There is, however, an exception to the general rule on awarding attorney's fees that has been carved out by our sister districts and the federal Sixth Circuit that allows for the award of attorney's fees as compensatory damages.

### Attorney's fees have been held recoverable as compensatory damages in actions for breach of a settlement agreement.

**{¶31}** While Dornette posits that the trial court's award of attorney's fees on Redknot's claim for breach of the settlement agreement is contrary to law, Ohio courts have held the opposite. When a prevailing party moves to dismiss the plaintiff's action, and where the action was brought in breach of a settlement agreement, Ohio courts have recognized an exception to the American Rule.

**{¶32}** Ohio courts have long held that where parties have entered into a settlement agreement to end litigation and a party incurs attorney's fees by having to continue litigation due to a breach of that agreement, those fees are recoverable as compensatory damages. *Shanker v. Columbus Warehouse Ltd. Partnership*, 2000 Ohio App. LEXIS 2391, *14 (10th Dist. June 6, 2000), citing *S&D Mechanical Contrs. v. Enting Water Conditioning Sys.*, 71 Ohio App.3d 228, 241 (2d Dist. 1991). The *Shanker* court held that the American Rule did not apply under such circumstances

and, because defendant sought the attorney's fees as compensatory damages rather than as costs of the action, defendant was entitled to recover those fees to make him whole and compensate him for losses caused by plaintiffs' breach. *Id.*; *see Zele v. Ohio Bell Telephone Co.*, 2025-Ohio-1546, ¶ 37 (8th Dist.); *Horn v. Cherian*, 2023-Ohio-931, ¶ 52 (8th Dist.); *Brown v. Spitzer Chevrolet Co.*, 2012-Ohio-5623, ¶ 21 (5th Dist.); *Myron C. Wehr Properties, LLC v. Petraglia*, 2016-Ohio-3126, ¶ 36 (7th Dist.); *Waterfront, LLC v. Shia*, 2022-Ohio-3259, ¶ 28-30 (2d Dist.); *Marchbanks v. Ice House Ventures, LLC*, 2024-Ohio-417, ¶ 20 (10th Dist.); *see also Rohrer Corp. v. Dane Elec. Corp. USA*, 482 Fed.Appx. 113, 115-117 (6th Cir. 2012).

**{¶33}** The only case that Dornette cites to support his position is *Shamrock v. Cobra Resources, LLC*, 2022-Ohio-1998, ¶ 133 (11th Dist.) (Lynch, J., concurring in part and dissenting in part), in which the Eleventh District declined to adopt the *Shanker* exception to the American Rule that attorney's fees are recoverable as compensatory damages in actions for breach of a settlement agreement. The dissent in *Shamrock*, however, highlighted a string of Ohio appellate cases that have adopted the *Shanker* exception and concluded that the majority's holding "fail[ed] to give any weight to the fact that those Ohio appellate districts that have addressed this issue have reached the contrary conclusion: a breach of a settlement agreement entitles a party to attorney's fees as compensatory damages." *Id.* at ¶ 141-142 (Lynch, J., dissenting in part).

**{¶34}** Dornette also cites to the dissent in *Rayco Mfg., Inc. v. Murphy, Rogers, Sloss & Gambel*, 2019-Ohio-3756, ¶ 37 (8th Dist.) (Sheehan, J., dissenting) in support of his argument. The majority in that case, however, held that attorney's fees could be awarded as compensatory damages to the prevailing party on a motion to enforce a settlement agreement when the fees were incurred as a direct result of a breach of such

12

an agreement; thus, such fees were compensatory damages rather than "costs of litigation," and the American Rule did not preclude their recovery even where none of the other exceptions to the American Rule applied. *Id*. at ¶ 6, 8-18.

**{¶35}** The *Rayco* court concluded that "[a]llowing recovery of attorney's fees as compensatory damages on a motion to enforce a settlement agreement is consistent with the strong public policy that exists in encouraging settlements and enforcing settlement agreements." *Id*. at ¶ 17. It further held that, otherwise, "a party who had a 'change of heart' regarding a settlement agreement would have nothing to lose by refusing to comply with the settlement agreement, challenging the existence or enforceability of the settlement agreement, and continuing to litigate the matter, notwithstanding the harm to the nonbreaching party." *Id*. at ¶ 18; *see also Wilson v. Prime Source Healthcare of Ohio*, 2018 U.S. Dist. LEXIS 34445 (N.D.Ohio Mar. 2, 2018) (where a settling party forces the other party to litigate a motion to enforce the settlement, the party forced to enforce the settlement agreement is "entitled to attorney's fees stemming from this additional litigation as compensatory damages").

**{¶36}** The *Rayco* court added that a "nonbreaching party should not be compelled to initiate a separate action and file and serve a new complaint (or seek leave to amend a previously filed complaint), incurring even greater expense and further wasting limited judicial resources, in order to recover its compensatory damages incurred in enforcing a settlement agreement." *Rayco* at ¶ 19.

**{¶37}** While the Ohio Supreme Court has not addressed the exception to the American Rule adopted by our sister districts, there is nothing to suggest that the Court has considered and condemned the exception. Further, cases holding that attorney's fees cannot generally be recovered address the recovery of attorney's fees as costs, not as compensatory damages. Here, Redknot sought attorney's fees not as costs

of litigation, but as compensatory damages for Dornette's breach of the settlement agreement. That was the basis for the trial court's judgment.

{¶38} Having found no merit to the issues raised by Dornette, we overrule his single assignment of error.

### III. Conclusion

{¶39} The Construction Contract stated that Redknot would deliver a LEED certificate if it were obtained. The record is devoid of any promise by Redknot to deliver any other materials. Even if Redknot owed something more to Dornette under the contract, any such obligation was nullified by the settlement agreement, which released all "claims, demands . . . breaches of contract, litigation, causes of action, warranties, breaches of duty or any relationship . . . whether sounding in law, equity, contract . . . past, present and future." The plain language of the settlement agreement reflects that the parties settled their differences and, thus, released the other from future claims.

{¶40} Dornette's argument that Redknot was not entitled to attorney's fees on its counterclaim for breach of the settlement agreement fails because, as other courts addressing this issue have all held, a party's expenditure on attorney's fees due to a breach of a settlement agreement is recoverable as compensatory damages.

{¶41} The trial court, therefore, did not err by denying Dornette's motion for summary judgment and granting summary judgment in Redknot's favor and awarding Redknot attorney's fees as compensatory damages. Accordingly, we affirm the trial court's judgment.

Judgment affirmed.

**ZAYAS, P.J.,** and **CROUSE, J.,** concur.