[Cite as *Wray v. Ice House Ventures, L.L.C.*, 2021-Ohio-4195.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Jerry Wray, Director of the Ohio Department of Transportation, | : | |
| Plaintiff-Appellant, | : | No 21AP-24 |
| | | (C.P.C. No. 16CV-7726) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Ice House Ventures, LLC, et al., | : | |
| Defendants-Appellees. | : | |

D E C I S I O N

Rendered on November 30, 2021

**On brief:** *Dave Yost*, Attorney General, *William J. Cole, L. Martin Cordero*, and *Gregory S. Severance*, for appellant. **Argued:** *William J. Cole.*

**On brief:** *Vorys Sater Seymour & Pease LLP, Joseph R. Miller, John M. Kuhl*, and *Daniel E. Shuey*, for appellee. **Argued:** *John M. Kuhl.*

APPEAL from the Franklin County Court of Common Pleas

BEATTY BLUNT, J.

{¶ 1} Plaintiff-appellant, the Ohio Department of Transportation ("ODOT"), appeals from the judgment of the Franklin County Court of Common Pleas granting the motion of defendants-appellees, Ice House Ventures, LLC, Lion Management Services, LLC, and Smokestack Ventures, LLC (collectively, "IHV"), to enforce agreed judgment entry on settlement and finding ODOT liable for damages, attorney fees, and costs. For the reasons that follow, we reverse the judgment of the trial court.

## I.  Facts and Procedural History

{¶ 2}   As observed in this court's previous decision in *Ohio Dept. of Transp. v. Ice House Ventures, LLC,* 10th Dist. No. 19AP-459, 2020-Ohio-6935 ("*Ice House I*"), the underlying facts of this case are neither complicated nor in dispute, and are reiterated here as follows:

> ODOT is reconfiguring and improving Interstates 70 and 71 through downtown Columbus, Ohio. (*See generally* August 17, 2016 Petition to Appropriate Property and to Fix Compensation ("Petition").)  As part of the project, ODOT needed to appropriate a portion of IHV's real property located in the area known as the Brewery District ("the Property"). (*Id.*, Ex.1.)  Thus, on August 17, 2016, ODOT filed an appropriation action in the Franklin County Court of Common Pleas and deposited $343,280 with the Clerk of Courts.  (*See id.*)
>
> Subsequently, each of the parties obtained its own appraisal reflecting the compensation due IHV as a result of ODOT's appropriation.  ODOT's appraiser, Brian Barnes, opined the total compensation due IHV was $370,000, including $168,064 for land taken and $201,936 in damages to the residue.  (Barnes appraisal.) IHV's appraiser, Debi Wilcox, opined the total compensation due IHV was $2,509,777, consisting of $149,190 for land taken and $2,200,810 in damages to the residue.  (Wilcox appraisal.) Both appraisers considered the loss of parking spaces to be a significant component of the respective determinations of damages to the Property's residue.
>
> Ultimately, the parties reached a settlement prior to trial.  The terms of the settlement were memorialized via an Agreed Judgment Entry and Transfer of Property and Order for Distribution.  (Oct. 11, 2018 Agreed Jgmt. Entry, hereinafter "Agreed Entry.")  The Agreed Entry provided that IHV would receive $900,000 from ODOT "as partial consideration for the appropriation of IHV's property."  (Agreed Entry at 1.)  The Agreed Entry further provided that "as additional material consideration for the appropriation of property from IHV, ODOT shall provide IHV with marketable fee simple title to the real property" delineated as the "Parking Mitigation Property." (*Id.* at 1-2.)  The Parking Mitigation Property was described "as a parking lot sufficient to hold twelve (12) parking spaces" as depicted in an attachment incorporated within the Agreed Entry. (*Id.* at 2.)  The Agreed Entry stipulated that, amongst other obligations, if ODOT failed to convey marketable fee

> simple title to the Parking Mitigation Property within one year of the date of the Agreed Entry, "then the Court shall retain jurisdiction to determine the damages due to IHV for the failure of ODOT to deliver this portion of the consideration for ODOT's appropriation of IHV's property." (*Id.* at 5-6.)
>
> At some point in early 2019, ODOT advised the trial court that it would be unable to convey marketable fee simple title to the Parking Mitigation Property to IHV because the current holder of the title to the property—the City of Columbus (the "City")—was unwilling to convey the parcel to ODOT. (June 18, 2019 Order and Entry Granting Defendant's Motion to Enforce Agreed Judgment Entry on Settlement, hereinafter "Order and Entry," at 2.) It is apparent from the record that although ODOT believed that the City would be willing to convey the Parking Mitigation Property to ODOT for subsequent conveyance of the property to IHV, ODOT entered into the Agreed Judgment Entry without firm assurance from, or an agreement with, the City that this was actually the case. (*See* June 3-4, 2019 Tr. at 8-9; 349-350.) On April 29, 2019, IHV filed a Motion to Enforce Agreed Judgment Entry (hereinafter "Motion to Enforce"). After full briefing by the parties, the trial court held a hearing on the Motion to Enforce commencing on June 3, 2019.
>
> On June 18, 2019, the trial court issued its Order and Entry which granted IHV's Motion to Enforce. The trial court specifically determined that ODOT breached the parties' settlement as memorialized in the Agreed Entry; that IHV was entitled to $900,000 as damages for ODOT's failure to convey title to the Parking Mitigation Property; and that IHV was entitled to attorney fees and costs ensuing from ODOT's breach, in an amount to be determined at a later hearing.

*Id.* at ¶ 2-6.

{¶ 3} On July 19, 2019, ODOT filed its notice of appeal from the June 18, 2019 order and entry. In a decision issued on December 29, 2020, this court dismissed the appeal as premature. *See Ice House I.* Specifically, we found that because the order and entry reserved the issue of the amount of attorney fees and costs for a later hearing and did not include Civ.R. 54(B) language indicating "there is no just reason for delay," the trial court's order was not final and appealable. *Id.* at ¶ 14-16.

{¶ 4} Subsequently, on January 8, 2021, the parties filed a joint motion to certify interlocutory appeal. On January 12, 2021, the trial court granted the motion and issued

an order and entry which is identical to the court's previous June 18, 2019 order and entry with the exception that it includes the following additional language: "* * * The Court finds, pursuant to Ohio Civil Rule 54(B) and Revised Code Section 2505.02, that any delay would affect the substantial rights of both parties, and that there is no just reason for delay." (Jan. 12, 2021 Order & Entry at 17.)

{¶ 5}   This timely appeal followed.

## II. Assignments of Error

{¶ 6}   Appellant assigns the following four errors for our review:

> [I.] The Trial Court erred in enforcing settlement because there was no meeting of the minds on a material term of settlement.
>
> [II.] The Trial Court lacked subject-matter jurisdiction to award contract damages against ODOT.
>
> [III.] The Trial Court erred in finding that ODOT breached the settlement.
>
> [IV.] The Trial Court erred in finding ODOT liable for IHV's attorney fees.

## III. Law and Analysis

### A. Appellant's First Assignment of Error

{¶ 7}   We begin with appellant's first assignment of error, not only because it is first sequentially but because we find it dispositive to resolving this appeal. In its first assignment of error, appellant asserts the trial court erred, as a matter of law, by enforcing the parties' settlement because there was no meeting of the minds on a material term of settlement. More specifically, appellant asserts the parties did not come to a meeting of the minds as to what was meant by the term "damages." We agree.

{¶ 8}   An appellate review of whether an enforceable contract exists raises a mixed question of fact and law:

> "We accept the facts found by the trial court on some competent, credible evidence, but freely review application of the law to the facts. A reviewing court should be guided by a presumption that the findings of a trial court are correct, since the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use their

observations in weighing credibility of the proffered testimony."

*Phu Ta v. Chaudhry*, 10th Dist. No. 15AP-867, 2016-Ohio-4944, ¶ 17, quoting *McSweeney v. Jackson*, 117 Ohio App.3d 623, 632 (4th Dist.1996). "However, reviews of questions of law regarding the existence of a contract are de novo." *Id.*, citing *Continental W. Condominium Unit Owners Assn. v. Howard E. Ferguson, Inc.*, 74 Ohio St.3d 501, 502 (1996). Therefore, while "[a]n appellate court may freely review application of the law to the facts," it must "show deference to the factual findings made by the trial court. Where there are factual disputes, it is generally the province of the trial court to resolve those disputes by weighing credibility of the proffered testimony." (Internal citations omitted.) *DeHoff v. Veterinary Hosp. Operations of Cent. Ohio, Inc.*, 10th Dist. No. 02AP-454, 2003-Ohio-3334, ¶ 49.

{¶ 9} A settlement agreement is a contract designed to terminate a claim by preventing or ending litigation. *Infinite Sec. Solutions, L.L.C. v. Karam Properties. II, LTD.*, 143 Ohio St.3d 346, 2015-Ohio-1101, ¶ 16. " 'A contract is generally defined as a promise, or a set of promises, actionable upon breach. Essential elements of a contract include an offer, acceptance, contractual capacity, consideration (the bargained for legal benefit and/or detriment), a manifestation of mutual assent and legality of object and of consideration.' " *Kostelnik v. Helper*, 96 Ohio St.3d 1, 2002-Ohio-2985, ¶ 16, quoting *Perlmuter Printing Co. v. Strome, Inc.*, 436 F. Supp. 409, 414 (N.D.Ohio 1976). "A meeting of the minds as to the essential terms of the contract is a requirement to enforcing the contract." *Id.*, citing *Episcopal Retirement Homes, Inc. v. Ohio Dept. of Indus. Relations*, 61 Ohio St.3d 366, 369 (1991). "Whether there is a meeting of the minds is a factual determination, and a party's unilateral declaration that his perception varied from the other's is not sufficient to upset a trial court's determination on the issue if that determination is supported by sufficient evidence to the contrary." *Aftermath, Inc. v. Buffington*, 10th Dist. No. 09AP-410, 2010-Ohio-19, ¶ 5, citing *Goal Sys. Internatl. Inc. v. Klouda*, 10th Dist. No. 84AP-168 (Oct. 10, 1985).

{¶ 10} " 'To constitute a valid settlement agreement, the terms of the agreement must be reasonably certain and clear,' and if there is uncertainty as to the terms then the court should hold a hearing to determine if an enforceable settlement exists." *Kostelnik* at

¶ 17, quoting *Rulli v. Fan Co.*, 79 Ohio St.3d 374, 376-77 (1997). " 'Vagueness of expression, indefiniteness and uncertainty as to any of the essential terms of an agreement, have often been held to prevent the creation of an enforceable contract.' " *Rulli* at 376, quoting 1 *Corbin on Contracts*, Section 4.1, 525 (Rev.Ed.1993). "Where, after parties have apparently agreed to the terms of a contract, circumstances show an ambiguity in the meaning of an essential provision, by which one of the parties meant one thing, and the other a different, the difference going to the essence of the supposed contract, the result is that there is no contract." *Millstone Dev. v. Duron, Inc.*, 10th Dist. No. 00AP-999 (June 28, 2001).

{¶ 11} The agreed judgment entry at issue in this matter provided, in pertinent part, that if ODOT did not convey the Parking Mitigation Property to IHV within one year, the trial court "shall retain jurisdiction to determine the damages due to IHV for the failure of ODOT to deliver this portion of the consideration for ODOT's appropriation of IHV's property." (Agreed Jgmt. Entry at 5-6.) The term "damages" is not defined in the Agreed Judgment Entry. ODOT argues that "damages" meant eminent domain damages, i.e., damages to the residue, whereas IHV contends "damages" meant contract damages, i.e., expectation damages premised on the benefit of the bargain.

{¶ 12} In an eminent domain case where a partial appropriation has occurred, the property owner is entitled to both compensation for the property taken and " ' "damages" for injury to the property which remains after the taking, i.e., the residue.' " *Hilliard v. First Indus., L.P.*, 10th Dist. No. 03AP-1019, 2004-Ohio-5836, ¶ 5, quoting *Norwood v. Forest Converting Co.*, 16 Ohio App.3d 411, 415 (1st Dist.1984); R.C. 163.14(A) and (B). Damage to the residue is measured by the difference between the fair market value of the property prior to the appropriation and the fair market value of the property after the appropriation. *Hilliard* at ¶ 5.

{¶ 13} ODOT's position is that because the agreed judgment entry was meant to resolve an appropriation proceeding, there was no question that it believed that "damages" meant damages to the residue. In contrast, IHV's position is that "damages" meant contract damages, i.e., expectation/benefit-of-the-bargain damages for breach of the settlement agreement. As urged by ODOT, these two positions are utterly divergent and irreconcilable.

{¶ 14} We observe that generally, the issue of whether there was a "meeting of the minds" on what the term "damages" meant would be a factual one, the findings on which

we should defer to the trial court.  *See Aftermath, Inc. v. Buffington*, 10th Dist. No. 09AP-410, 2010-Ohio-19, ¶ 5, citing *Goal Systems Internatl. Inc.*, 10th Dist. No. 84AP-168 (Oct. 10, 1985).  In this case, however, the trial court did not take any specific testimony or other evidence as to what each side meant by the term "damages" as used in the agreed judgment entry.  Nor did the trial court make any specific findings on this issue.  Rather, the trial court simply concluded "expectation damages are appropriate because the Agreed Entry on Settlement was materially designed to give IHV twelve (12) parking spaces.  The only way to give IHV the benefit of their bargain (i.e., to place them in the same position as if the settlement had been fully performed) is to award IHV expectation damages for the loss of the twelve (12) parking spaces at issue."  (Jan. 12, 2021 Order & Entry at 14.)  This conclusion begs the question as to what the parties meant by "damages" and thus, notwithstanding that this court would generally defer to the trial court's findings as to what "damages" meant, we have no findings in this case to which we might defer.

{¶ 15}  Moreover, in addition to the parties' uncompromisable positions on this issue as presented in their appellate briefs, the record shows the parties were not in agreement as to what "damages" meant.  First, IHV's motion to enforce the settlement agreement and its reply in support thereof makes clear it believed it was entitled to the "benefit of its bargain," i.e., expectation damages.  (Apr. 29, 2019 Mot. to Enforce at 5; May 20, 2019 Reply at 1.)  In contrast, ODOT's memorandum in opposition makes clear it believed that, following ODOT's inability to convey the Parking Mitigation Property, IHV was entitled to damages to the residue, damages which "are distinct from money damages for breach of contract" which "are not part of an appropriation case."  (May 13, 2019 Memo. in Opp. at 4-5.)

{¶ 16}  At the June 2019 hearing on IHV's motion to enforce the settlement agreement, the parties' fundamentally divergent understandings on what was meant by "damages" continued to be apparent.  ODOT's counsel made clear in his opening statement that the parties did not share the same understanding as to what was meant by damages.  (June 3, 2019 Tr. at 22-23.)  ODOT's counsel reiterated ODOT's understanding of the term "damages" during his cross-examination of IHV's appraiser, and repeatedly questioned the witness regarding damages to the residue.  *Id.* at 126, 128-31, 133-35. (June 4, 2019 Tr. at 223-25, 233-34, 237-38, 240.)  Tellingly, IHV's counsel objected to questions regarding

eminent domain-related damages, asserting the parties were at the hearing to determine IHV's "benefit of the bargain" and IHV's "expected benefits." *Id.* at 129, 225. Counsel for IHV also objected to testimony regarding the value of the property prior to the taking on the same grounds. *Id.* at 231. Finally, in its closing argument, ODOT's counsel specifically referred to the lack of a meeting of the minds on the issue of the damages to which IHV was entitled, reiterating that there was a disconnect between the parties' respective understandings on that issue. *Id.* at 342-43.

{¶ 17} In short, the record does not contain any evidence to support the conclusion that the parties mutually agreed that "damages" meant expectation damages versus damages to the residue and indeed, shows that the parties disagreed on what "damages" meant. Because there is no evidence of a meeting of the minds on what the parties meant by "damages," the trial court erred by finding there was an enforceable settlement agreement in the first place. *See, e.g., Beasley v. ANG, Inc.*, 10th Dist. No. 12AP-1050, 2013-Ohio-4882 (in an appropriation proceeding, the trial court abused its discretion and therefore erred by adopting the magistrate's decision granting a motion to enforce a purported settlement agreement where there was no meeting of the minds as to the extent of the property to be appropriated); *Ohio Title Corp. v. Pingue*, 10th Dist. No. 10AP-1010, 2012-Ohio-1370 (finding that the trial record demonstrated that the parties failed to reach a meeting of the minds with respect to several essential terms of a purported settlement agreement for purchase of a property, including whether the seller would retain a non-exclusive easement over the property). Because there is no enforceable settlement agreement, the agreed judgment entry must be vacated, and the case must be tried–as any appropriation proceeding would be tried–on the issues of compensation for the property taken and damages to the residue.

{¶ 18} Accordingly, based on the foregoing, appellant's first assignment of error is sustained.

## B. Appellant's Second, Third, and Fourth Assignments of Error

{¶ 19} We have already determined that the trial court erred in enforcing the parties' settlement because there was no meeting of the minds on what was meant by the term "damages" as used in the agreed judgment entry. This determination being dispositive of this matter, we need not and decline to reach the issues presented in ODOT's second, third,

and fourth assignments of error.  App.R. 12(A)(1)(c); *see also Capital Care Network of Toledo v. Ohio Dept. of Health*, 153 Ohio St.3d 362, 2018-Ohio-440, ¶ 31 (" '[I]f it is not necessary to decide more, it is necessary not to decide more,' " quoting *PDK Laboratories, Inc. v. United States Drug Enforcement Admin.*, 362 F.3d 786, 799 (D.C.Cir.2004) (Roberts, J., concurring in part and concurring in judgment)).  Therefore, based on our resolution of appellant's first assignment of error, ODOT's second, third, and fourth assignments of error are moot.

## IV.  Disposition

{¶ 20}  For the foregoing reasons, we sustain ODOT's first assignment of error, and find ODOT's second, third, and fourth assignments of error are moot.  Accordingly, we reverse the judgment of the Franklin County Court of Common Pleas and remand this matter for further proceedings consistent with this decision.

*Judgment reversed and cause remanded.*

DORRIAN, P.J., and MENTEL, J., concur.
_____