[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Marchbanks v. Ice House Ventures, L.L.C.*, Slip Opinion No. 2023-Ohio-1866.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2023-OHIO-1866

MARCHBANKS, DIR. OF THE OHIO DEPARTMENT OF TRANSPORTATION, APPELLEE, *v.* ICE HOUSE VENTURES, L.L.C., ET AL., APPELLANTS.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Marchbanks v. Ice House Ventures, L.L.C.*, Slip Opinion No. 2023-Ohio-1866.]

*Contracts—Damages—Eminent domain—Parties did not make a material mistake about a basic assumption on which their contract was made—Settlement agreement was enforceable—Court of appeals' judgment reversed and cause remanded to the court of appeals.*

(No. 2022-0047—Submitted February 7, 2023—Decided June 8, 2023.)

APPEAL from the Court of Appeals for Franklin County, No. 21AP-24, 2021-Ohio-4195.

_____

STEWART, J.

{¶ 1} In this discretionary appeal, we are asked to determine whether there was an enforceable settlement agreement between appellee, Jack Marchbanks,

director of the Ohio Department of Transportation ("ODOT"),[1] and appellants, Ice House Ventures, L.L.C., Lion Management Services, L.L.C., and Smokestack Ventures, L.L.C. (collectively, "IHV"), related to an appropriation proceeding resulting from ODOT's exercise of eminent domain over property owned by IHV. Because we conclude that there was an enforceable settlement agreement, we reverse the judgment of the Tenth District Court of Appeals and remand the case to that court for further proceedings.

## I. Facts and Procedural History

{¶ 2} As part of a project to repair and improve Interstate 70 running through downtown Columbus, the state, through ODOT, sought to exercise eminent domain over property owned by IHV in the city's Brewery District. In 2016, ODOT filed a petition in the Franklin County Court of Common Pleas to appropriate the property in accordance with statutorily prescribed eminent-domain procedures. IHV exercised its right to demand a jury trial to determine the value of the appropriated property. In 2018, a few days before trial was scheduled to begin, ODOT and IHV informed the trial court that they had reached an agreement on a compensation package, under which ODOT would compensate IHV in exchange for a release of all claims for further compensation, including interest, arising from the appropriation. The trial court memorialized the parties' settlement agreement in a judgment entry.

{¶ 3} The compensation portion of the settlement agreement consisted of two parts: (1) a payment of $900,000 from ODOT to IHV and (2) the transfer of a small parcel of land, which is referred to in the agreement as the "Parking Mitigation Property," to IHV. The second part of the compensation portion of the agreement, regarding the transfer of the small parcel of land, is the basis of this

---

1. The current director of ODOT, Marchbanks, is substituted as a party for the former director of ODOT, Jerry Wray, who was the director when this action commenced. *See* S.Ct.Prac.R. 4.06(B); Civ.R. 25(D)(1).

dispute. Although the city of Columbus owned the small parcel of land at the time of the agreement, ODOT believed that the city would be willing to transfer the parcel to ODOT, which could then transfer the parcel to IHV. The agreement stated that "ODOT shall provide IHV with marketable fee simple title" to the Parking Mitigation Property and that the property "shall be conveyed to [IHV] free and clear of all limitations of access or other liens and encumbrances, excepting only such restrictions and easements of record which shall not unreasonably interfere with use of the Parking Mitigation Property as a parking lot sufficient to hold twelve (12) parking spaces as generally depicted in [a parking plan attached to the agreement as an exhibit]."

{¶ 4} There is no dispute that ODOT was unable to transfer the Parking Mitigation Property to IHV. Because that portion of the agreement was not performed, the following language in the agreement is relevant to this appeal:

> It is further **ORDERED** that, within one year after the date hereof: (1) if ODOT fails to convey marketable fee simple title to the Parking Mitigation Property as provided herein; or (2) if ODOT fails to modify its plans for [the improvements to Interstate 70] to allow for the construction of a parking lot on the Parking Mitigation Property in accordance with the Parking Plan; or (3) if all permits and/or approvals required for IHV to construct a parking lot on the Parking Mitigation Property in accordance with the Parking Plan have not been obtained; then the Court shall retain jurisdiction to determine the damages due to IHV for the failure of ODOT to deliver this portion of the consideration for ODOT's appropriation of IHV's property.

(Boldface and capitalization sic.)

**{¶ 5}** In April 2019, IHV moved to enforce the agreed judgment entry on the settlement. In June 2019, the trial court held an evidentiary hearing on the motion and thereafter issued an order granting IHV's motion and awarding damages to IHV. The following portion of the order summarizes the trial court's reasoning for the damages award and states the amount of the award:

Once the Parties settled the case in October 2018, ODOT's Eminent Domain action terminated. After ODOT informed IHV and the Court that it could not deliver the Parking Mitigation Property, this case became about ODOT's potential breach of settlement, nothing more. The Court appreciates the evidence from the numerous expert witnesses who testified about the various eminent domain appraisals, but once ODOT conceded it could not deliver the Parking Mitigation Property, this case ceased to be about the value of IHV's property before and after the taking. It was never about the damage to the residue, or what the Parking Mitigation parcel is worth. The issues are 1) did ODOT breach the settlement, and if so, 2) what is the value of twelve (12) parking spaces in the Brewery District, because that is what ODOT promised to IHV. Those spaces are what IHV expected, and the monetary damages for the value of those twelve (12) spaces is what IHV is entitled to under Ohio law.

**V. HOLDINGS AND ORDERS**

Based on the foregoing, the Court hereby issues the following orders:

1. The Court awards Ice House Ventures judgment in the amount of nine hundred thousand dollars ($900,000.00).

* * *

(Boldface and capitalization sic.)

{¶ 6} ODOT appealed the trial court's judgment to the Tenth District Court of Appeals, raising four assignments of error: (1) "The trial court erred in enforcing settlement because there was no meeting of the minds on a material term of settlement," (2) "The trial court lacked subject-matter jurisdiction to award contract damages against ODOT," (3) "The trial court erred in finding that ODOT breached the settlement," and (4) "The trial court erred in finding ODOT liable for IHV's attorney fees."

{¶ 7} The Tenth District reversed the trial court's judgment based on ODOT's first assignment of error.  2021-Ohio-4195, ¶ 7, 17-18.  The court of appeals noted that the term "damages" was not defined in the agreement.  *Id.* at ¶ 11.  It also noted that ODOT had argued that the term "damages" in the agreement meant eminent-domain damages, i.e., "damages to the residue," whereas IHV had contended that "damages" meant contract damages, i.e., "expectation damages premised on the benefit of the bargain."  *Id.*  The court determined that "the record does not contain any evidence to support the conclusion that the parties mutually agreed that 'damages' meant expectation damages versus damages to the residue and indeed, shows that the parties disagreed on what 'damages' meant."  *Id.* at ¶ 17.  And it held that "[b]ecause there is no evidence of a meeting of the minds on what the parties meant by 'damages,' the trial court erred by finding there was an enforceable settlement agreement in the first place."  *Id.*  The court of appeals vacated the agreed judgment entry on the settlement and remanded the matter for trial "as any appropriation proceeding would be tried—on the issues of compensation for the property taken and damages to the residue."  *Id.*

**{¶ 8}** This court accepted IHV's discretionary appeal on the following propositions of law[2]:

> [1.] When parties enter into a written settlement agreement, a meeting of minds is presumed. That presumption may only be rebutted by competent evidence, not after-the-fact argument by counsel.

> [2.] After a written agreement is memorialized in a court order, a party may not collaterally attack the order by claiming that no meeting of the minds exists. A trial court has the inherent authority to interpret and enforce its own order.

> [3.] A party alleging a breach of a settlement agreement in an eminent domain matter is entitled to its expectation damages.

*See* 166 Ohio St.3d 1448, 2022-Ohio-994, 184 N.E.3d 159.

## II. Law and Analysis

**{¶ 9}** Under its first proposition of law, IHV asks this court to hold that Ohio law presumes that a meeting of the minds exists when parties enter into a written agreement and that the presumption may be overcome only by "clear and satisfactory" evidence. At the outset, we note that the posture of this case is different from that in a contract dispute in which one side files a complaint seeking

---

2. We note that in its memorandum in opposition to jurisdiction, ODOT, the appellee here, presented three "Plaintiff-Appellee's Proposition[s] of Law," even though ODOT did not file a cross-appeal in this court. In its merit brief, ODOT has presented three "Proposition[s] of Law" that do not correspond directly to IHV's propositions of law that we accepted for review. Although parties in this court are free to strategically craft their arguments as they see fit, we caution appellees to be mindful of two relevant rules of practice in this court. S.Ct.Prac.R. 7.03(B)(1)(b) requires a memorandum in response to a memorandum in support of jurisdiction to contain "[a] brief and concise argument in support of the appellee's position regarding each proposition of law raised *in the memorandum in support of jurisdiction*." (Emphasis added.) And S.Ct.Prac.R. 16.03(B)(1) states, "The appellee's brief *shall * * * answer the appellant's contentions * * ** and make any other appropriate contentions as reasons for affirmance of the order or judgment from which the appeal is taken." (Emphasis added.)

to enforce contractual terms and the other side asserts defenses. Here, the proceeding in the trial court that led to this appeal was a damages hearing conducted pursuant to the parties' settlement agreement, which stated that the trial court "shall retain jurisdiction" to determine damages. The arguments at that hearing centered on the proper nature and amount of damages and not on whether the agreement was valid or any alleged lack of clarity about the parties' performances or obligations under the agreement.[3] Although ODOT argued in the trial court that it should interpret the meaning of the term "damages" in the agreement as meaning "damages to the residue," ODOT also presented evidence of what it asserted to be the proper calculation of expectation damages, if the court were to determine that expectation damages were what IHV should be awarded.

{¶ 10} ODOT attempts to analogize this case to *Rulli v. Fan Co.*, 79 Ohio St.3d 374, 683 N.E.2d 337 (1997). In *Rulli*, this court recognized that "[t]o constitute a valid settlement agreement, the terms of the agreement must be reasonably certain and clear." *Id.* at 376. We held that "[w]here the meaning of terms of a settlement agreement is disputed, or where there is a dispute that contests the existence of a settlement agreement, a trial court must conduct an evidentiary hearing prior to entering judgment." *Id.* at 377.

{¶ 11} We find *Rulli* wholly distinguishable from this case. This court described the facts in *Rulli* as follows:

---

3. We recognize that ODOT argued in its response to IHV's motion to enforce the agreed entry on settlement that "[i]n the alternative, if as stated by IHV, 'the property conveyance was the linchpin to the settlement[,]' then this court can set aside the entire settlement and set this for a trial on the merits to determine the issues of compensation for the property taken and damages to the residue, if any, pursuant to standard practice in eminent domain actions." We understand that argument to go to IHV's request for specific performance—i.e., that the court require ODOT to convey the Parking Mitigation Property to IHV—and not to any argument that the contract was not valid or enforceable.

Though upon first examination, the settlement terms as read into the record on June 23, 1993, appear reasonably clear, the parties were subsequently unable to agree upon the meaning and effect of those terms. They were unable to execute a formal purchase agreement and they did not provide the court with an entry as ordered by the court. The parties instead offered varying interpretations of the terms read into the record, and disputed nearly every major element of the purported agreement. Therefore, the language read into the record at the initial hearing reflects, at best, merely an agreement to make a contract.

*Id.* at 376-377.

{¶ 12} Unlike in *Rulli*, the record in this case demonstrates that ODOT and IHV clearly intended to enter into, and in fact entered into, a binding settlement agreement. During ODOT's closing argument at the June 2019 evidentiary hearing, ODOT's counsel stated about the agreement: "It's black and white. It's written. Your Honor signed it. You know, so we are not disputing that at all. What we— what we are disputing is that valuation attached to [the Parking Mitigation Property]." The circumstances in this case are not analogous to those in *Rulli*, in which the parties had failed to even reduce their purported oral agreement to a judgment entry as was requested by the court, *id.* at 374-375.

{¶ 13} Moreover, " '[e]ssential elements of a contract include an offer, acceptance, contractual capacity, consideration (the bargained for legal benefit and/or detriment), a manifestation of mutual assent and legality of object and of consideration.' " *Kostelnik v. Helper*, 96 Ohio St.3d 1, 2002-Ohio-2985, 770 N.E.2d 58, ¶ 16, quoting *Perlmuter Printing Co. v. Strome, Inc.*, 436 F.Supp. 409, 414 (N.D.Ohio 1976). Because a breach of a contract is not an inevitability, it cannot follow that a definition of "damages" is an essential element of a contract.

If a contract's terms are properly performed, the question of damages never arises. Indeed, a valid contract may exist and bind the parties without its mentioning damages at all. Thus, we reject ODOT's argument that *Rulli* instructs that the settlement agreement here was not a valid contract simply because the term "damages" was not defined therein.

{¶ 14} After the trial court awarded expectation damages to IHV, ODOT argued on appeal that the trial court had erred by enforcing the parties' settlement agreement because, in its view, there had been no meeting of the minds as to what the parties meant by the term "damages." Indeed, ODOT's arguments in the court of appeals and here seem to conflate the concepts of lack of a meeting of the minds and mutual mistake. Its arguments are best understood as claims that it should be *relieved* of its obligations under the settlement agreement, not that it did not agree to those obligations under the settlement in the first place.

{¶ 15} This court has recognized the doctrine of mutual mistake as a ground for rescission of an existing agreement. *See Reilley v. Richards*, 69 Ohio St.3d 352, 632 N.E.2d 507 (1994), citing *Irwin v. Wilson*, 45 Ohio St. 426, 15 N.E. 209 (1887). The mistake must be one that is material to the contract, i.e., a mistake regarding a basic assumption on which the contract was made that frustrates the intent of the parties. *Id.* at 353; 1 Restatement of the Law 2d, Contracts, Section 152(1), at 385 (1981). "The party alleging mutual mistake bears the burden of proving its existence by clear and convincing evidence." *Coldwell v. Moore*, 2014-Ohio-5323, 22 N.E.3d 1097, ¶ 18 (7th Dist.), citing *Frate v. Rimenik*, 115 Ohio St. 11, 152 N.E. 14 (1926), paragraph one of the syllabus.

{¶ 16} ODOT asserts that the "textbook" example of mutual mistake found in *Raffles v. Wichelhaus*, 159 Eng.Rep. 375 (1864), is instructive here. In *Raffles*, the parties agreed to the sale of cotton arriving at Liverpool, England, from Bombay, India, aboard a ship named "Peerless." *Id.* But two ships named "Peerless" sailed from Bombay to Liverpool several months apart carrying cotton,

with the seller having meant one of those ships and the buyer having meant the other. *Id.* ODOT argues that the parties' disagreement over the meaning of the term "damages" here is like the confusion over the ships in *Raffles*.

{¶ 17} But unlike in *Raffles*, the purported "mistake" here does not concern the basis of the parties' agreement. Specifically, the parties' performances under the agreement—ODOT's compensation to IHV for the appropriation of IHV's land and IHV's release of claims for further compensation relating to the appropriation—did not depend on a particular calculation or amount of damages. And the parties did not contract for a particular type or amount of damages, despite being sophisticated parties negotiating in good faith with the advice of legal counsel. For example, the parties could have included a liquidated-damages clause or some specific description of the type of damages to be awarded if that were appropriate under and material to the agreement. However, the agreement is clear that the parties left the question of damages to the trial court, if the question arose. The agreed judgment entry on the settlement plainly states: "[T]he Court shall retain jurisdiction to determine the damages due to IHV for the failure of ODOT to deliver this portion of the consideration[, i.e., the Parking Mitigation Property,] for ODOT's appropriation of IHV's property."

{¶ 18} Moreover, had the terms of the contract been fully performed, the question of damages never would have arisen. In other words, even assuming that each party understood the term "damages" to mean something different, that mistake would not frustrate the obligations of the parties or the intent of the agreement, because the parties' performances of the terms existed independently of the type or amount of damages that might become due if a breach occurred. Any uncertainty regarding the meaning that each party assigned to the term "damages" in the agreement is irrelevant, because the essential elements of the parties' agreement were clear. *See, e.g.*, *Coldwell*, 2014-Ohio-5323, 22 N.E.3d 1097, at ¶ 22 ("Regardless of the meaning the [buyers] attached to the term 'minerals' or

10

what they believed they already owned, the record is clear that they intended to buy *all* of the mineral rights to those parcels from the [sellers]" [emphasis sic]). Thus, even if we were to determine that the parties understood the meaning of the term "damages" in the agreement differently, that is not a mistake that is material to the agreement.

**{¶ 19}** Further, recall that a material mutual mistake is " 'a mistake * * * as to a basic assumption *on which the contract was made* [that] has a material effect on the agreed exchange of performances.' " (Ellipsis and brackets added in *Reilley* and emphasis added.) *Reilley*, 69 Ohio St.3d at 353, 632 N.E.2d 507, quoting 1 Restatement, Section 152(1), at 385. ODOT points to no evidence showing that it had a different understanding of the term "damages" *at the time* the agreement was made in a way that has a material effect on the parties' agreed-upon settlement obligations. The point in time at which a different understanding of a term occurs is important. The court of appeals determined that the parties' "fundamentally divergent understandings" of the term "damages" was apparent based on the arguments presented at the hearing on the motion to enforce the settlement agreement, during which ODOT attempted to minimize its damages exposure while IHV attempted to maximize its potential recovery. 2019-Ohio-4195 at ¶ 16. This after-the-fact disagreement about how to construe the term "damages" does not support a finding that the parties made a material mistake about a basic assumption *on which the contract was made*.

**{¶ 20}** Accordingly, ODOT has not shown by clear and convincing evidence that it is entitled to rescission of the settlement agreement or that any lack of understanding about the term "damages" in the agreement renders it unenforceable.

### III. Conclusion

**{¶ 21}** Because we conclude that the settlement agreement is enforceable, we reverse the judgment of the Tenth District holding otherwise. The Tenth

District's decision resolved ODOT's appeal only on its first assignment of error, in which ODOT argued that there had been no meeting of the minds on a material term of the settlement agreement. 2021-Ohio-4195 at ¶ 19. Based on that resolution, the court of appeals declined to address ODOT's three remaining assignments of error, some of which raise issues that may be determinative of the parties' liabilities and obligations under the agreement. Given that those issues remain unresolved in the court of appeals, and given our resolution of IHV's first proposition of law, we need not address IHV's remaining propositions of law to this court and, instead, we remand the cause to the Tenth District Court of Appeals for it to address ODOT's remaining assignments of error.

Judgment reversed

and cause remanded.

KENNEDY, C.J., and FISCHER, DEWINE, DONNELLY, BRUNNER, and DETERS, JJ., concur.

––––––––––––––––––

Dave Yost, Attorney General, Benjamin M. Flowers, Solicitor General, Samuel C. Peterson, Deputy Solicitor General, and William J. Cole and L. Martin Cordero, Assistant Attorneys General, for appellee.

Vorys, Sater, Seymour & Pease, L.L.P., Joseph R. Miller, John M. Kuhl, Daniel E. Shuey, and Danielle S. Rice, for appellants.

Dinsmore & Shohl, L.L.P., and Richik Sarkar; and Kevin D. Shimp, Ohio Chamber of Commerce, urging reversal for amicus curiae, Ohio Chamber of Commerce.

––––––––––––––––––