[Cite as *Marchbanks v. Ice House Ventures, L.L.C.*, 2024-Ohio-417.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| [Jack Marchbanks], Director of the Ohio Department of Transportation, | : | |
| | : | |
| Plaintiff-Appellant, | : | |
| | : | No. 21AP-24 |
| v. | | (C.P.C. No. 16CV-7726) |
| | : | |
| Ice House Ventures, LLC et al., | : | (REGULAR CALENDAR) |
| | : | |
| Defendants-Appellees. | : | |
| | : | |

D E C I S I O N

Rendered on February 6, 2024

**On brief:** *Dave Yost*, Attorney General, *William J. Cole, L. Martin Cordero*, and *Gregory S. Severance*, for appellant.

**On brief:** *Vorys Sater Seymour & Pease LLP, Joseph R. Miller, John M. Kuhl*, and *Daniel E. Shuey*, for appellees.

APPEAL from the Franklin County Court of Common Pleas

BEATTY BLUNT, J.

{¶ 1} This case is before the court pursuant to a remand from the Supreme Court of Ohio. *See Marchbanks v. Ice House Ventures, LLC,* 171 Ohio St.3d 637, 2023-Ohio-1866 ("*Ice House III*").[1] The Supreme Court reversed our judgment in *Wray v. Ice House Ventures, LLC*, 10th Dist. No. 21AP-24, 2021-Ohio-4195 ("*Ice House II*") and remanded the case to this court to address the three assignments of error that were rendered moot by our prior decision in *Ice House II*. Before doing so, we will set forth the factual and procedural background of the case.

---

[1] The current director of ODOT, Jack Marchbanks, was substituted as a party for the former director of ODOT, Jerry Wray, who was the director when this action commenced, pursuant to S.Ct.Prac.R. 4.06(B) and Civ.R. 25(D)(1).

## I.  Facts and Procedural History

{¶ 2}  Our prior decision in *Ice House II* sets forth the following factual and procedural background:

> ODOT is reconfiguring and improving Interstates 70 and 71 through downtown Columbus, Ohio. (*See generally* August 17, 2016 Petition to Appropriate Property and to Fix Compensation ("Petition").)  As part of the project, ODOT needed to appropriate a portion of IHV's real property located in the area known as the Brewery District ("the Property"). (*Id.*, Ex.1.)  Thus, on August 17, 2016, ODOT filed an appropriation action in the Franklin County Court of Common Pleas and deposited $343,280 with the Clerk of Courts.  (*See id.*)
>
> Subsequently, each of the parties obtained its own appraisal reflecting the compensation due IHV as a result of ODOT's appropriation.  ODOT's appraiser, Brian Barnes, opined the total compensation due IHV was $370,000, including $168,064 for land taken and $201,936 in damages to the residue.  (Barnes appraisal.)  IHV's appraiser, Debi Wilcox, opined the total compensation due IHV was $2,509,777, consisting of $149,190 for land taken and $2,200,810 in damages to the residue.  (Wilcox appraisal.)  Both appraisers considered the loss of parking spaces to be a significant component of the respective determinations of damages to the Property's residue.
>
> Ultimately, the parties reached a settlement prior to trial.  The terms of the settlement were memorialized via an Agreed Judgment Entry and Transfer of Property and Order for Distribution.  (Oct. 11, 2018 Agreed Jgmt. Entry, hereinafter "Agreed Entry.")  The Agreed Entry provided that IHV would receive $900,000 from ODOT "as partial consideration for the appropriation of IHV's property." (Agreed Entry at 1.)  The Agreed Entry further provided that "as additional material consideration for the appropriation of property from IHV, ODOT shall provide IHV with marketable fee simple title to the real property" delineated as the "Parking Mitigation Property." (*Id.* at 1-2.) The Parking Mitigation Property was described "as a parking lot sufficient to hold twelve (12) parking spaces" as depicted in an attachment incorporated within the Agreed Entry. (*Id.* at 2.)  The Agreed Entry stipulated that, amongst other obligations, if ODOT failed to convey marketable fee simple title to the Parking Mitigation Property within one year of the date of the Agreed Entry, "then the Court shall retain jurisdiction to determine the damages due to IHV for the

failure of ODOT to deliver this portion of the consideration for ODOT's appropriation of IHV's property." (*Id.* at 5-6.)

At some point in early 2019, ODOT advised the trial court that it would be unable to convey marketable fee simple title to the Parking Mitigation Property to IHV because the current holder of the title to the property—the City of Columbus (the "City")— was unwilling to convey the parcel to ODOT. (June 18, 2019 Order and Entry Granting Defendant's Motion to Enforce Agreed Judgment Entry on Settlement, hereinafter "Order and Entry," at 2.) It is apparent from the record that although ODOT believed that the City would be willing to convey the Parking Mitigation Property to ODOT for subsequent conveyance of the property to IHV, ODOT entered into the Agreed Judgment Entry without firm assurance from, or an agreement with, the City that this was actually the case. (*See* June 3-4, 2019 Tr. at 8-9; 349-350.) On April 29, 2019, IHV filed a Motion to Enforce Agreed Judgment Entry (hereinafter "Motion to Enforce"). After full briefing by the parties, the trial court held a hearing on the Motion to Enforce commencing on June 3, 2019.

On June 18, 2019, the trial court issued its Order and Entry which granted IHV's Motion to Enforce. The trial court specifically determined that ODOT breached the parties' settlement as memorialized in the Agreed Entry; that IHV was entitled to $900,000 as damages for ODOT's failure to convey title to the Parking Mitigation Property; and that IHV was entitled to attorney fees and costs ensuing from ODOT's breach, in an amount to be determined at a later hearing.

*Ice House II* at ¶ 2, quoting *Ice House I*, 2020-Ohio-6935, ¶ 2-6.[2]

{¶ 3} Our decision in *Ice House II* further set forth the following relevant procedural history:

On July 19, 2019, 2020, ODOT filed its notice of appeal from the June 18, 2019 order and entry. In a decision issued on December 29, 2020, this court dismissed the appeal as premature. *See Ice House I*, 2020-Ohio-6935. Specifically, we found that because the order and entry reserved the issue of the amount of attorney fees and costs for a later hearing and did not include Civ.R. 54(B) language indicating "there is no just

_____

[2] As noted in paragraph three of the herein decision, *Ice House I* was dismissed as being a premature appeal.

reason for delay," the trial court's order was not final and appealable. *Id.* at ¶ 14-16.

Subsequently, on January 8, 2021, the parties filed a joint motion to certify interlocutory appeal. On January 12, 2021, the trial court granted the motion and issued an order and entry which is identical to the court's previous June 18, 2019 order and entry with the exception that it includes the following additional language: "* * * The Court finds, pursuant to Ohio Civil Rule 54(B) and Revised Code Section 2505.02, that any delay would affect the substantial rights of both parties, and that there is no just reason for delay." (Jan. 12, 2021 Order & Entry at 17.)

*Ice House II* at ¶ 3-4.

{¶ 4} A timely appeal of the trial court's January 12, 2021 Order and Entry followed. *Ice House II* at ¶ 5. Ultimately, we determined that the trial court erred in enforcing the parties' settlement agreement because there was no meeting of the minds on a material term of settlement, to wit: what the parties meant by the term "damages." *See Ice House II at ¶* 14-17. Accordingly, we sustained ODOT's first assignment of error. *Id.* at ¶ 18. We further found the remaining three assignments of error moot. *Id.* at ¶ 19.

{¶ 5} On appeal by ODOT to the Supreme Court of Ohio, the court found that the parties did not make a material mistake about a basic assumption on which their settlement agreement was made, and thus the agreement was enforceable. More specifically, the court stated as follows:

> [T]he purported "mistake" here does not concern the basis of the parties' agreement. Specifically, the parties' performances under the agreement—ODOT's compensation to IHV for the appropriation of IHV's land and IHV's release of claims for further compensation relating to the appropriation—did not depend on a particular calculation or amount of damages. And the parties did not contract for a particular type or amount of damages, despite being sophisticated parties negotiating in good faith with the advice of legal counsel. For example, the parties could have included a liquidated-damages clause or some specific description of the type of damages to be awarded if that were appropriate under and material to the agreement. However, the agreement is clear that the parties left the question of damages to the trial court, if the question were to arise. The agreed judgment entry on the settlement plainly states: "[T]he Court shall retain jurisdiction to determine the

damages due to IHV for the failure of ODOT to deliver this portion of the consideration[, i.e., the Parking Mitigation Property,] for ODOT's appropriation of IHV's property."

Moreover, had the terms of the contract been fully performed, the question of damages never would have arisen. In other words, even assuming that each party understood the term "damages" to mean something different, that mistake would not frustrate the obligations of the parties or the intent of the agreement, because the parties' performances of the terms existed independently of the type or amount of damages that might become due if a breach occurred. Any uncertainty regarding the meaning that each party assigned to the term "damages" in the agreement is irrelevant, because the essential elements of the parties' agreement were clear. *See, e.g., Coldwell*, 2014-Ohio-5323, 22 N.E.3d 1097, at ¶ 22 ("Regardless of the meaning the [buyers] attached to the term 'minerals' or what they believed they already owned, the record is clear that they intended to buy *all* of the mineral rights to those parcels from the [sellers]" [emphasis sic]). Thus, even if we were to determine that the parties understood the meaning of the term "damages" in the agreement differently, that is not a mistake that is material to the agreement.

(Emphasis sic.) *Ice House III* at ¶ 17-18. The Supreme Court concluded that ODOT "has not shown by clear and convincing evidence that it is entitled to rescission of the settlement agreement or that any lack of understanding about the term 'damages' in the agreement renders it unenforceable." *Id.* at ¶ 20.

{¶ 6} Based on the court's determination, and as noted previously, the Supreme Court reversed our judgment in *Ice House II* and remanded the matter with instructions to consider the three assignments of error we had previously found moot. *Id.* at ¶ 21. We now proceed with such consideration.

## II. Assignments of Error

{¶ 7} The assignments of error remanded to this court for consideration are set forth as follows:

[2.] The Trial Court lacked subject-matter jurisdiction to award contract damages against ODOT.

[3.] The Trial Court erred in finding that ODOT breached the settlement.

[4.] The Trial Court erred in finding ODOT liable for [IHV's] attorney fees.

## III.  Law and Analysis

### A.  Appellant's Second Assignment of Error

{¶ 8}    In its second assignment of error, ODOT asserts the trial court lacked subject-matter jurisdiction to award contract damages against it.  We disagree.

{¶ 9}    We begin our discussion by setting forth a potent observation made by the Supreme Court regarding the posture of the within matter.  On this point, the court declared as follows:

> At the outset, we note that the posture of this case is different from that in a contract dispute in which one side files a complaint seeking to enforce contractual terms and the other side asserts defenses.  Here, the proceeding in the trial court that led to this appeal was a damages hearing conducted pursuant to the parties' settlement agreement, which stated that the trial court "shall retain jurisdiction" to determine damages. The arguments at that hearing centered on the proper nature and amount of damages and not on whether the agreement was valid or any alleged lack of clarity about the parties' performances or obligations under the agreement. Although ODOT argued in the trial court that it should interpret the meaning of the term "damages" in the agreement as meaning "damages to the residue," ODOT also presented evidence of what it asserted to be the proper calculation of expectation damages, if the court were to determine that expectation damages were what IHV should be awarded.

*Ice House III* at ¶ 9.  Thus, as aptly assessed by the Supreme Court, this is not a typical breach of contract action initiated by a private plaintiff against the state of Ohio as a defendant.  Rather, it began as—and remains—an eminent domain action initiated in a court of common pleas by the state itself, with the settlement agreement at the heart of the instant matter arising out of that eminent domain action.

{¶ 10} The Court of Claims has "exclusive, original jurisdiction of all civil actions against the state permitted by the waiver of immunity contained in section 2743.02 of the Revised Code." R.C. 2743.03(A)(1). Nevertheless, "not all suits against the state are channeled to the Court of Claims by the act. To the extent that the state consented to be sued before the enactment of R.C. Chapter 2743, the chapter has no applicability." *Cirino*

*v. Ohio Bureau of Workers' Comp.*, 153 Ohio St.3d 333, 338, 2018-Ohio-2665, ¶ 19, citing R.C. 2743.02(A)(1). Thus, contrary to ODOT's contention, the court of claims is not the sole arbiter over all disputes seeking money damages against the state.

{¶ 11} Moreover, as observed by the Supreme Court in *Ice House III* and discussed above, this case is not a "civil action against the state" as that term is used in R.C 2743.03(A)(1) in the first place. Rather, it is an eminent domain action. And, as the Supreme Court has previously explained,

> [w]hen a court has the constitutional or statutory power to adjudicate a particular class or type of case, that court has subject-matter jurisdiction. *Ostanek v. Ostanek*, 166 Ohio St.3d 1, 2021-Ohio-2319, 181 N.E.3d 1162, ¶ 36, citing *Corder v. Ohio Edison Co.*, 162 Ohio St.3d 639, 2020-Ohio-5220, 166 N.E.3d 1180, ¶ 14. Common pleas courts "have such original jurisdiction over all justiciable matters * * * as may be provided by law." Ohio Constitution, Article IV, Section 4(B). **And the Eminent Domain Act provides jurisdiction in appropriation cases to the court of common pleas in the "county in which the property sought to be appropriated is located."** R.C. 163.01(D) and 163.05.

(Emphasis added.) *Schlegel v. Sweeney*, 171 Ohio St.3d 1, 2022-Ohio-3841, ¶ 12. Thus, because the within matter is an appropriations proceeding, the Franklin County Court of Common Pleas has subject jurisdiction over the entire matter, including jurisdiction over the parties' settlement agreement and the issue of damages should that issue become necessary to decide.

{¶ 12} In support of its position that the trial court's subject-matter jurisdiction in this case is limited to determining the amount of compensation and damages to the residue to which the property owner is entitled, ODOT directs this court to two cases: *Thormyer v. Irvin*, 170 Ohio St. 276 (1960), and *Proctor v. Thieken*, 4th Dist. No. 03CA33, 2004-Ohio-7281 (Lawrence Cty.). These cases are not apposite. Neither case involved the issue of damages for breach of a settlement agreement entered into in order to avoid a jury trial to determine damages in the context of an appropriations proceeding. In *Thormyer*, the Supreme Court affirmed a decision of the Court of Appeals for Muskingum County which held that the question of the necessity and the extent of the appropriation of land is not determinable in a proceeding in which the state is exercising its power of eminent domain.

The Supreme Court held that the question of necessity may be determined in a separate action to enjoin the proceeding, but once the proceeding had gone forward the jurisdiction of the trial court was "limited to a determination of the amount of compensation and damages to which the landowner is entitled." *Thormyer* at paragraph one of the syllabus. And in *Proctor*, the Court of Appeals for the Fourth District, following *Thormyer*, held that the trial court did not have jurisdiction to determine if an additional taking beyond that which was delineated in the complaint had occurred. *Proctor* at ¶ 29. Thus, ODOT has cited no authority that supports its proposition that the trial court lacked subject-matter jurisdiction to award IHV its expectation damages as a result of ODOT's breach of the parties' settlement agreement for its failure to convey the Parking Mitigation Property. Neither has our own research revealed any such authority.

{¶ 13} Furthermore, it is beyond dispute the parties agreed that the trial court retained jurisdiction over the matter of damages. We reiterate the Supreme Court's statement on this point in *Ice House III*:

> the parties' performances under the agreement—ODOT's compensation to IHV for the appropriation of IHV's land and IHV's release of claims for further compensation relating to the appropriation—did not depend on a particular calculation or amount of damages. And the parties did not contract for a particular type or amount of damages, despite being sophisticated parties negotiating in good faith with the advice of legal counsel. For example, the parties could have included a liquidated-damages clause or some specific description of the type of damages to be awarded if that were appropriate under and material to the agreement. However, *the agreement is clear that the parties left the question of damages to the trial court, if the question were to arise.* The agreed judgment entry on the settlement plainly states: "[T]he Court shall retain jurisdiction to determine the damages due to IHV for the failure of ODOT to deliver this portion of the consideration [, i.e., the Parking Mitigation Property,] for ODOT's appropriation of IHV's property."

(Emphasis added.) *Ice House III* at ¶ 17. Therefore, having identified no authority supporting the proposition that the trial court did not have subject-matter jurisdiction to award contract damages for ODOT's breach of the parties' settlement agreement, and having found the parties' agreement is clear that the issue of damages was left to the trial

court should the issue arise, we conclude the trial court had subject-matter jurisdiction to award contract damages against ODOT for its breach of the parties' agreement.

{¶ 14} Accordingly, based on the foregoing, appellant's second assignment of error is overruled.

## B. Appellant's Third Assignment of Error

{¶ 15} In its third assignment of error, ODOT asserts the trial court erred in finding that ODOT breached the parties' settlement agreement. We disagree.

{¶ 16} We begin by observing that ODOT did not argue in the trial court that it was not in breach of the parties' settlement agreement. Indeed, the record is clear that not only did ODOT not argue it was not in breach of the parties' settlement agreement, ODOT conceded this point. The transcript from the June 3, 2019 damages hearing in the trial court evinces the following colloquy on this issue:

> THE COURT: Okay. I guess at this point is the State of Ohio, is the Department of Transportation *stipulating that it cannot comply with the terms of the agreed judgment entry*?
>
> [COUNSEL FOR ODOT]: *Yes, Your Honor. We can't transfer that property.* The City of Columbus will not transfer the property to ODOT, yes.
>
> THE COURT: Okay. Based on the stipulation then, the Court will find that the State of Ohio is in breach of the agreed settlement order that was filed on October 11, 2018.

(Emphasis added.) (June 3, 2019 Tr. at 9.) The above exchange makes it abundantly clear that ODOT did, in fact, stipulate that it could not comply with the terms of the parties' settlement agreement, and ODOT's characterization of this exchange as not being one of concession to a breach, but rather a mere inability to deliver the Parking Mitigation Property amounts to nothing more than a distinction without a difference. Under the clear and unambiguous terms of the parties' settlement agreement, ODOT's failure to deliver the Parking Mitigation Property for ODOT's appropriation of IHV's property *is* a breach of that agreement.

{¶ 17} Furthermore, the transcript is devoid of any indication that ODOT disagreed with the court's finding of a breach of the parties' settlement agreement. ODOT did not object to the finding, nor make any other kind of protestation of the finding on the record.

In short, ODOT failed to make any kind of argument in the trial court that it was not in breach of the agreement.  It is well-settled that "[u]nder Ohio law, 'arguments raised for the first time on appeal are improper.' " *Tucker v. Leadership Academy for Math*, 10th Dist. No. 14AP-100, 2014-Ohio-3307, ¶ 20, quoting *Marysville Newspapers, Inc. v. Delaware Gazette Co., Inc.*, 3d Dist. No. 14-06-34, 2007-Ohio-4365, ¶ 23.  "Parties cannot raise any new issues for the first time on appeal, and the failure to raise an issue at the trial level waives it on appeal." *Bell v. Teasley*, 10th Dist. No. 10AP-850, 2011-Ohio-2744, ¶ 15, citing *Gangale v. Ohio Bur. of Motor Vehicles*, 10th Dist. No. 01AP-1406, 2002-Ohio-2936, ¶ 13. Indeed, even a de novo standard of review "does not supersede [the] settled practice of not addressing issues raised for the first time on appeal." *Tucker* at ¶ 20, quoting *Henson v. Cleveland Steel Container Corp.*, 11th Dist. No. 2008-P-0053, 2009-Ohio-180, ¶ 77. Therefore, we decline to further address this new argument raised for the first time on appeal.

{¶ 18}  Accordingly, based on the foregoing, appellant's third assignment of error is overruled.

### C.  Appellant's Fourth Assignment of Error

{¶ 19}  In appellant's fourth assignment of error, ODOT contends that the trial court erred in finding ODOT liable for IHV's attorney fees.  We disagree.

{¶ 20}  Ohio law is clear that where a party breaches a settlement agreement entered into to resolve litigation and the breach causes the other party to incur attorney fees in continuing the litigation, such fees are properly awarded by a court as compensatory damages, and both this court and other courts have consistently followed this principle of law. *Rohrer Corp. v. Dane Elec. Corp. USA*, 482 Fed.Appx. 113, 115-17 (6th Cir.2012); *Brown v. Spitzer Chevrolet Co.*, 5th Dist. No. 2012 CA 00105, 2012-Ohio-5623, ¶ 20-21; *Berry v. Lupica*, 196 Ohio App.3d 687, 2011-Ohio-5381, ¶ 19-20 (8th Dist.); *Raymond J. Schaefer, Inc. v. Pytlik*, 6th Dist. No. OT-09-026, 2010-Ohio-4714, ¶ 33-34; *State ex rel. Ohio Atty. Gen. v. Tabacalera Nacional, S.A.A.*, 10th Dist. No. 12AP-606, 2013-Ohio-2070; *Tejada-Hercules v. State Auto Ins. Co.*, 10th Dist. No. 08AP-150, 2008-Ohio-5066, ¶ 7-23; *Shanker v. Columbus Warehouse Ltd. Partnership*, 10th Dist. No. 99AP-772, 2000 Ohio App. LEXIS 2391 (June 6, 2000).  In *Shanker*, we acknowledged that Ohio adheres to the "American Rule," which generally prevents a prevailing party from recovering attorney fees

as part of the costs of litigation. *Shanker* at *12. We found the American Rule inapplicable, however, because the defendant did not claim attorney fees as costs of the action. Rather, the defendant sought attorney fees as compensatory damages flowing from the plaintiffs' breach of the settlement agreement. *Id*. Accordingly, because IHV's attorney fees are attributable to and were incurred as the result of ODOT's breach of the parties' settlement agreement, IHV is entitled to recover those fees in order to compensate and make whole IHV for losses caused by ODOT's breach.

{¶ 21} ODOT recognizes the foregoing authority but asserts that a more recent opinion issued by the Supreme Court of Ohio controls here and unequivocally forecloses any award of attorney fees to IHV in this matter. Specifically, ODOT cites to *State ex rel. New Wen, Inc. v. Marchbanks*, 163 Ohio St.3d 14, 2020-Ohio-4865, wherein the court found, in a per curiam opinion, that attorney fees were not recoverable in a mandamus action brought to compel an appropriation proceeding. The Supreme Court came to this conclusion after noting that the Ohio Revised Code contained no provision authorizing an award of attorney fees in an inverse-condemnation proceeding.[3] *New Wen, Inc*. at ¶ 8-10.

{¶ 22} We find *New Wen, Inc*. wholly distinguishable from the instant case. First, as noted above, *New Wen, Inc*. was an original action in mandamus brought by a property owner to compel the state to file a proper appropriation proceeding when the state had already taken the owner's property—it was not itself an appropriation proceeding. Second, the property owner in *New Wen, Inc*. was not seeking its attorney fees as part of its compensatory damages flowing from the state's breach of any settlement agreement entered into to end the litigation; rather, the property owner was seeking its attorney fees incurred in having to bring the action in mandamus in the first instance. The circumstances in the instant matter are not analogous to those in *New Wen, Inc*., and contrary to ODOT's assertion it does not control in this case.

{¶ 23} Finally, ODOT argues in its reply brief that even if ODOT could be liable for IHV's attorney fees as a result of ODOT's breach of the parties' settlement agreement, the

---

[3] Notably, in a concurring opinion, Justice Fischer opined that while he agreed there was no current statutory authorization for an award of attorney fees in an inverse condemnation proceeding, he "believe[d] that legislators should specifically at least consider whether Ohioans, or any Americans for that matter, who have had property improperly taken by any government—and who must go to court to correct that problem caused by the government—should be entitled to their attorney fees, which they incurred to uphold their constitutionally protected property rights." *New Wen, Inc*. at ¶ 18.

trial court lacked subject-matter jurisdiction to award such fees. We note that ODOT did not present this argument in its opening brief. An appellant may use a reply brief to respond to the brief of appellee, not to raise new issues for the first time. *Hadden Co., L.P.A. v. Zweier*, 10th Dist. No. 15AP-210, 2016-Ohio-2733, ¶ 15, citing *State v. Mitchell*, 10th Dist. No. 10AP-756, 2011-Ohio-3818, ¶ 47. *See also* App.R. 16(C). We will generally not address a new argument raised for the first time in a reply brief. *Hadden Co., L.P.A.* at ¶ 15, citing *State v. Shedwick*, 10th Dist. No. 11AP-709, 2012-Ohio-2270, ¶ 50. Accordingly, this new argument could rightly be disregarded. Even if it were not disregarded, however, this argument lacks merit for the same reasons as those discussed under ODOT's second assignment of error above.

{¶ 24} Therefore, based on the forgoing discussion, we find the trial court did not err when it determined that IHV was entitled to an award of attorney fees incurred as a result of ODOT's breach of the parties' settlement agreement. Accordingly, appellant's fourth assignment of error is overruled.

## IV. Disposition

{¶ 25} For the foregoing reasons, we overrule ODOT's second, third, and fourth assignments of error. Accordingly, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

MENTEL, P.J., and DORRIAN, J., concur.

———————————